[No. G007223. Fourth Dist., Div. Three. Feb. 28, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL DOWE WEAGLEY, Defendant and Appellant.

COUNSEL

Miguel D. Mirano, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, and Steven H. Zeigen, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

SONENSHINE, J.—Michael Dowe Weagley pleaded guilty to possession of cocaine for sale (Health & Saf. Code, § 11351) after his motion to suppress evidence was denied. On appeal he challenges the denial of his motion (Pen. Code, § 1538.5, subd. (m)), claiming the mailbox from which the contraband was seized was outside the scope of the search warrant.

I.

On September 15, 1987, San Clemente Police Officer Neil Murray obtained a warrant to search Weagley's San Clemente apartment. The warrant described the "premises" as follows: "209 #1 Miramar, City of San Clemente, County of Orange, State of California is a two-story three-unit apartment complex. It is a yellow stucco, brown trim, and red clay structure. It is the fourth house west of Ola Vista Street. Apartment number one is on the west side of the building, faces east, and is on the ground level and

is brown in color. It has a three car garage. The garage for unit #1 is the far west garage which is situated in the front of the structure." The warrant also directed a search of Weagley's person and a 1986 Mazda pickup truck. The subject of the search included "items which disclose the identity of those persons committing the crime and having possessory interest in the described premises such as utility receipts, cancelled mail, phone bills, rent receipts, and keys. Also keys to safety deposit boxes."

Murray served the warrant at the designated address early in the morning on September 17th. Weagley was present, as was Lisa Barnes who occupied a room inside the apartment. After searching the apartment and the garage, Murray called for Orange County Sheriff's Deputy Charles Chapman.

Chapman arrived an hour or two later, accompanied by his dog, "Snowball." After searching the garage, the apartment, and the backyard, at the request of Laguna Beach Police Officer Wallach, he checked the mailboxes. He recalled he thought Wallach "may have mentioned to Investigator Murray that they had found narcotics in mailboxes on prior occasions and that [it] would be a good idea to have [him] check it . . . ." Chapman allowed Snowball to conduct an "olfactory search" of the mailboxes pursuant to which Snowball "alerted" upon a mailbox marked "A," bearing the name "Lisa Barnes." Chapman obtained a ring of keys from Wallach and returned to the mailbox. Inside the box was a white powdery substance, later determined to be cocaine.

The court was shown photographs of the mailboxes and their proximity to the apartments and garages. Murray testified at the preliminary hearing that the mailbox was located on the west side of the building to the front and Weagley's front door was located on the west side of the building to the rear. He described the mailbox as being part of the wall of the building. According to Chapman, the apartments were numbered one, two and three; the mailboxes were lettered "A," "B," and "C." He noted the only mail found in box "A" was "junk mail," addressed apparently to "occupant."

The court denied Weagley's motion to suppress. It stated: "My view is that the warrant is broad enough for two reasons. [¶] First, it does call for the seizure of letters and correspondence which either may be found in the house or in a mail receptical [sic], specifically a mailbox, and I am persuaded by the cases that tell us that associated physical objects in which things are found can be searched pursuant to a warrant that allows search of a house. [¶] Here the mailbox is clearly tied to the apartment to be searched. It's attached to the apartment, and thus I find that the search is within the scope of the warrant."

## II.

■ Weagley contends the search warrant permitted only the search of his apartment, the garage, his person, and his pickup truck. He acknowledges it specified a search for cancelled mail but argues it failed to particularly describe the mailbox itself as a location to be searched.

In *People* v. *Grossman* (1971) 19 Cal.App.3d 8 [96 Cal.Rptr. 437], the defendant argued the search of a carport cabinet marked "A" was outside the scope of a warrant to search apartment "A." The trial court set aside two counts of the information on that ground but the Court of Appeal reversed. The issue presented was whether the description of the premises to be searched "authorizes the search of areas appurtenant to the premises specifically described but not expressly included within the description." (*Id.*, at p. 11.) Noting "there is limited California authority on the point, [the court] conclude[d] that it does." (*Ibid.*)

The court relied on *People* v. *Estrada* (1965) 234 Cal.App.2d 136, 142 [44 Cal.Rptr. 165, 11 A.L.R.3d 1307] where the search of a garbage can marked "Apartment C," located outside an apartment building, was authorized by a warrant authorizing the search of the apartment occupied by the defendant, i.e., designated apartment C but not named in the warrant as such. It stated: "The rationale of *Estrada* validates the search involved in the case at bench. The description of 'Apartment A' must be held to include the carport cabinet marked 'A' here as the description in *Estrada* of the apartment occupied by Manuel Estrada was held to include a garbage can marked 'C,' the designation of his apartment." (*People* v. *Grossman, supra*, 19 Cal.App.3d at p. 12.)

And so it is here. We are unimpressed by Weagley's attempt to distinguish *Grossman* on the ground a mailbox lettered "A" was searched pursuant to a warrant to search an apartment numbered "1." ■ "A search warrant must describe the premises to be searched sufficiently so that the officer executing the warrant may, with reasonable effort, ascertain and identify the place intended. [Citations.]" (19 Cal.App.3d at p. 11.) ■ Here, the mailbox was sufficiently identifiable as the one corresponding to Weagley's apartment. The apartment building consisted of three units, numbered "1," "2," and "3." The three mailboxes were lettered "A," "B," and "C." Under these circumstances, it seems highly unlikely an officer executing the warrant would have difficulty determining which mail-

box belonged to unit "1." This is so regardless of the manner in which the receptacle was appended to the exterior wall.[1]

Further, we reject Weagley's suggestion a search warrant must expressly contain the term "appurtenances," as did the one in *People* v. *Fitzwater* (1968) 260 Cal.App.2d 478 [67 Cal.Rptr. 190],[2] to justify inclusion of the mailbox within its scope. As noted in *People* v. *Dumas* (1973) 9 Cal.3d 871 [109 Cal.Rptr. 304, 512 P.2d 1208]: "[A] warrant to search 'premises' located at a particular address is sufficient to support the search of outbuildings and appurtenances in addition to a main building when the various places searched are part of a single integral unit. [Citations.]" (*Id.*, at p. 881, fn. 5.) Use of the term "premises" is enough.

Nor is there merit to Weagley's contention a mailbox is an authorized federal depository which may be searched only pursuant to a federal warrant. His cited authorities pertain not to mailboxes, but rather, to mail matter itself. (See, e.g., 18 U.S.C. § 1701 et seq.; Fed. Rules Crim. Proc., rule 41, 18 U.S.C.) Despite its status as a receptacle for private mail, a mailbox, for purposes of determining the scope of a search warrant, is not unlike other types of receptacles such as storage lockers or cabinets[3] which are deemed appurtenances to the premises to be searched.[4]

Judgment affirmed.

Wallin, J., concurred.

CROSBY, Acting P. J., Concurring.—I agree with the majority opinion except with respect to the concluding discussion which equates mailboxes to storage lockers or cabinets. A willful and malicious breaking into a private-

[1] Weagley asserts the mailboxes were not built into an exterior wall, but rather, "were merely hanging from the garage wall on brackets."

[2] The warrant in *Fitzwater* specified a warehouse at "121 West 33rd Street, Los Angeles, California, . . . and appurtenances." The issue presented was the definition of the term "appurtenances" insofar as the search of a dismantled van situated on West 32nd Street was concerned. The court upheld the search, stating: "Under the circumstances of this case—and although the term 'appurtenances' is not to be endorsed as an omnibus appendage to descriptions in search warrants—we conclude that the warrant description before us reached the van as an 'appurtenance' to the warehouse." (*Id.*, at p. 488.)

In neither *Grossman* nor *Estrada* did the warrant specify "appurtenances."

[3] See *United States* v. *Asselin* (1st Cir. 1985) 775 F.2d 445, 446-447, upholding the search of a cocaine-filled birdhouse hanging from a tree located about 15 feet from a trailer which was the subject of the warrant.

[4] In light of our conclusion, we need not address the Attorney General's contention, citing *Nix* v. *Williams* (1984) 467 U.S. 431, 445 [81 L.Ed.2d 377, 388, 104 S.Ct. 2501], the evidence would inevitably have been discovered by lawful means since probable cause existed for the acquisition and execution of a warrant to search the mailbox.

ly owned mailbox is a federal felony. (18 U.S.C. § 1705.) Storage lockers and cabinets in private buildings do not ordinarily enjoy such protection. And contrary to the comments of the trial judge, the mail in Weagley's mailbox was still in the passage of the mails and not subject to seizure without a federal warrant.[1] (See 18 U.S.C. § 1701 et seq.; *Ross* v. *United States* (8th Cir. 1967) 374 F.2d 97, 103, cert. den. 389 U.S. 882 [19 L.Ed.2d 177, 88 S.Ct. 130].) The only mail which could have been lawfully seized under this warrant was that which had been physically received by the addressee beforehand.

Cocaine not contained in a mailed article is not protected, however, even in a private mailbox. A state officer serving a search warrant does not act with malice when inspecting the interior of such a receptacle for items listed in the warrant. (18 U.S.C. § 1705.) Thus, assuming *arguendo* that the exclusionary rule would be applicable to evidence seized in violation of federal postal statutes (as opposed to the U.S. Const., 4th Amend.), the motion to suppress was properly denied because no violation of federal law occurred in this case.

Appellant's petition for review by the Supreme Court was denied May 30, 1990.

---

[1] The junk mail in the mailbox was apparently not seized because it was addressed only to "occupant."