[No. H014151. Sixth Dist. June 5, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
SOLOMON STANLEY MINDER, Defendant and Appellant.

## COUNSEL

Shoko Michael, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Laurence K. Sullivan and Seth K. Schalit, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

BAMATTRE-MANOUKIAN, J.—After court trial, defendant Solomon Stanley Minder was convicted of two felony counts of unlawfully possessing firearms after a prior conviction of brandishing a firearm (counts 1 and 4; Pen. Code, § 12021, subd. (c))[1] and one misdemeanor count (3) of brandishing a firearm in a rude, angry, and threatening manner (§ 417). He was acquitted of the felony of discharging a firearm in a grossly negligent manner which could result in injury or death (count 2; § 246.3).

The trial court suspended imposition of sentence, as requested by the prosecutor, and placed defendant on three years' probation, including the following conditions: six months in jail, no contact with various individuals, no possession of firearms, violence counseling, subject to search, and destruction of his firearms.

On appeal defendant claims that each of two errors requires us to reverse the judgment. For the reasons stated below, we will affirm the judgment

---

[1]Unspecified section references are to the Penal Code.

because the trial court properly denied defendant's motion to suppress. The search warrant, interpreted in a commonsense manner, authorized the search of the safe located outside the defendant's residence. Further, defendant cannot object for the first time on appeal that the trial court should have made findings at the time of sentencing pursuant to California Rules of Court, rule 433(b).

### Trial Evidence

The sufficiency of the evidence is not questioned on appeal.

One count of firearm possession and the brandishing count were predicated on defendant's conduct in the afternoon of October 15, 1994. Six people described his conduct at trial. Defendant drove an all-terrain vehicle from his ranch house near Parkfield in Monterey County. He stopped at the fence line separating his property from that owned and leased by Phil and Dwight Williamson. He held a semiautomatic handgun in both hands and fired it up a hillside between four and eight times in the direction of David Clark and Roy Ford, who were hunting quail on the Williamsons' property on the first day of quail season. After firing the gun, defendant returned to his residence. At trial defendant and his cohabitant, Mary Ellen Polychronakis, denied that he fired a gun that day.

The second firearm possession count was based on the discovery of 17 firearms, half handguns and half rifles, during execution of a search warrant on October 31, 1994. Investigator Dennis Cates found the firearms in a locked, double-door safe outside defendant's residence. Defendant initially told Cates that the safe contained only photos and papers, not firearms, and that defendant did not have the combination. While they were waiting for a locksmith that Cates called, defendant admitted there were firearms in the safe and he opened it. At trial defendant admitted that most of the firearms in the safe were his and were not the subjects of his part-time work as a gunsmith.

### 1. The Suppression Motion

Defendant contends that the trial court erred in denying his pretrial motion to suppress the firearms found in the safe. Defendant contends that the search exceeded the scope of the warrant.

On October 31, 1994, Monterey County Sheriff's Investigator Dennis Cates executed a search warrant for defendant's residence. The written warrant authorized searching "[t]he MINDER residence, and the premises

therein" for firearms. It described the residence as "a brown, wooden residence, surrounded by large oak trees, and the only residence in the area."

The residence was on a 10-acre ranch outside of Parkfield in what Cates described as a very rural part of Monterey County. Cates found the large double-door safe on a piece of wood near the back porch of the house and about one to two feet outside an outer wall of the house. Inside the safe he found 17 firearms, both handguns and rifles.

Defendant's position is that the warrant did not authorize searching anything outside the outer walls of the residence. Due to its phrasing, particularly "premises therein," the warrant only authorized searching the inside of the residence.

■ It is a constitutional requirement that a warrant "particularly" describe the place to be searched. (U.S. Const., 4th Amend.; Cal. Const., art. I, § 13; cf. Pen. Code, §§ 1525, 1529.) "The description in a search warrant must be sufficiently definite that the officer conducting the search 'can with reasonable effort ascertain and identify the place intended.' (*Steele* v. *United States* (1925) 267 U.S. 498, 503 [69 L.Ed. 757, 760, 45 S.Ct. 414].) Nothing should be left to the discretion of the officer. (*Marron* v. *United States* (1927) 275 U.S. 192, 196 [72 L.Ed. 231, 237, 48 S.Ct. 74]." (*People* v. *Dumas* (1973) 9 Cal.3d 871, 880 [109 Cal.Rptr. 304, 512 P.2d 1208].) Officers are not entitled to search beyond the place described in the warrant. (*Ibid.*) "Whether the description in the warrant of the property to be seized is sufficiently definite is a question of law on which an appellate court makes an independent judgment." (*People* v. *Childress* (1979) 99 Cal.App.3d 36, 42 [160 Cal.Rptr. 47].)

As the court did in *People* v. *Smith* (1994) 21 Cal.App.4th 942 [26 Cal.Rptr.2d 580], "We [also will] review the warrant's description of the property to be searched in a commonsense and realistic fashion," (*id.* at p. 949) recalling that they are drafted by nonlawyers amidst the haste of a criminal investigation. " 'Technical requirements of elaborate specificity . . . have no proper place in this area.' " (*Ibid.*)

■ *People v. Smith*, *supra*, 21 Cal.App.4th at page 950, further recited: " '[A] warrant to search "premises" located at a particular address is sufficient to support the search of outbuildings and appurtenances in addition to a main building when the various places searched are part of a single integral unit. [Citations.]' [(]*People* v. *Dumas* (1973) 9 Cal.3d 871, 881, fn. 5 [109 Cal.Rptr. 304, 512 P.2d 1208]; see also *People* v. *Weagley* (1990) 218 Cal.App.3d 569, 573 [267 Cal.Rptr. 85].) 'The authority to search for

contraband and seize it on described premises extends "to all parts of the premises used for the unlawful purpose." [Fn. omitted.]' (*People* v. *Coulon* (1969) 273 Cal.App.2d 148, 155 [78 Cal.Rptr. 95], quoting *United States* v. *Rabinowitz* (1950) 339 U.S. 56, 62 [94 L.Ed. 653, 658, 70 S.Ct. 430].)"

There are many California cases that illustrate the principle of avoiding an overtechnical construction of a search warrant. (*People* v. *Smith, supra,* 21 Cal.App.4th at pp. 949-950 [a barn located over a quarter mile from the residence on a ranch qualified as an "outbuilding"]; *People* v. *Weagley* (1990) 218 Cal.App.3d 569, 572-573 [267 Cal.Rptr. 85] [mailbox attached to an apartment building considered to be part of apartment "premises"]; *People* v. *Grossman* (1971) 19 Cal.App.3d 8, 11 [96 Cal.Rptr. 437] [cabinet in carport considered part of apartment "premises"].)

Applying this principle, we consider it unrealistic and hypertechnical to interpret "therein" in the phrase "residence, and premises therein" as a word of art limiting the search of the premises to the interior of the residence. In other words, we interpret this phrase in the search warrant in a common-sense and realistic manner as meaning simply "residence, and premises." The trial court properly denied defendant's motion to suppress.

2. *Sentencing*

On appeal, defendant contends that the trial court at sentencing violated California Rules of Court, rule 433(b), which states: "If the imposition of sentence is to be suspended during a period of probation after a conviction by trial, the trial judge shall make factual findings as to circumstances which would justify imposition of the upper or lower term if probation is later revoked, based upon evidence admitted at the trial."

The Attorney General does not contend that the trial court complied with this rule. Instead, the Attorney General contends that defendant has waived this argument by failing to object at the time of sentencing.

Before defendant submitted to court trial, the court advised him that the maximum sentence he could receive was three years, eight months. The court trial concluded on March 7, 1995.

Sentencing occurred on May 4, 1995. Although the probation report recommended state prison, the prosecutor recommended felony probation and the court announced agreement at the outset of the hearing. At the end of the hearing, the trial judge advised defendant that if he came back, he was going to state prison "for something like five years, close to five years." The judge invited comments at the end of the hearing. There were none.

The parties disagree about the applicability of the prospective waiver doctrine announced in *People* v. *Scott* (1994) 9 Cal.4th 331 [36 Cal.Rptr.2d 627, 885 P.2d 1040], decided on December 30, 1994.

Defendant contends that the waiver doctrine does not apply to surprise sentencing choices by the trial judge. He relies on the following passages in *Scott.* "The parties have ample opportunity to influence the court's sentencing choices under the determinate scheme. As a practical matter, both sides often know before the hearing what sentence is likely to be imposed and the reasons therefor. Such information is contained in the probation report, which is required in every felony case and generally provided to the court and parties before sentencing. (§§ 1191, 1203, subds. (b) & (g), 1203c, 1203d, 1203.10; rules 411, 411.5(a)(8), (9); *People* v. *Edwards* (1976) 18 Cal.3d 796, 801 & fn. 8 [135 Cal.Rptr. 411, 557 P.2d 995].)" (9 Cal.4th at pp. 350-351.) "Of course, there must be a meaningful opportunity to object to the kinds of claims otherwise deemed waived by today's decision. This opportunity can occur only if, during the course of the sentencing hearing itself and before objections are made, the parties are clearly apprised of the sentence the court intends to impose and the reasons that support any discretionary choices." (*Id.* at p. 356.)

We agree with the Attorney General that defendant had sufficient notice here to base an objection on California Rules of Court, rule 433(b). While the probation report recommended state prison, the prosecutor began the hearing by requesting probation and the court immediately stated agreement. The hearing continued for some time before the court formally imposed probation and its conditions. The court also invited further comments at the end of the hearing and received none. Under these circumstances, we conclude that defendant was not deprived of a meaningful opportunity to object to the manner by which probation was imposed.

Defendant also contends that *Scott* limited itself to discretionary sentencing choices and California Rules of Court, rule 433(b) is mandatory, not discretionary. Several passages support defendant's premise. In the introduction to the *Scott* opinion, the court stated: "In *People* v. *Welch* (1993) 5 Cal.4th 228 [19 Cal.Rptr.2d 520, 851 P.2d 802] (*Welch*), we held that sentencing claims are not exempted per se from an objection requirement and that defendants cannot challenge the terms of their probation for the first time on appeal. Here, we apply the same principles to defendants who challenge the statement of reasons given by the trial court in support of its discretionary sentencing choices." (9 Cal.4th at p. 336.)

The stated holding of the case later in the discussion also emphasized discretion. "We conclude that the waiver doctrine should apply to claims

involving the trial court's failure to properly make or articulate its discretionary sentencing choices. Included in this category are cases in which the stated reasons allegedly do not.apply to the particular case, and cases in which the court purportedly erred because it double-counted a particular sentencing factor, misweighed the various factors, or failed to state any reasons or give a sufficient number of valid reasons." (9 Cal.4th at p. 353.) "In sum, we hold that complaints about the manner in which the trial court exercises its sentencing discretion and articulates its supporting reasons cannot be raised for the first time on appeal." (*Id.* at p. 356.)

Other parts of the waiver rule discussion in *Scott* emphasized the sentencing court's discretion. "Although many of the act's provisions are mandatory, the trial court often has broad discretion to tailor the sentence to the particular case. The choices available commonly include the decision to order probation rather than imprisonment, to impose the lower or upper term instead of the middle term of imprisonment, to impose consecutive rather than concurrent sentences under certain discretionary provisions, and to strike or stay certain enhancements or waive a restitution fine. (§ 1170.3.) As directed by the Legislature, the Judicial Council has promulgated rules to guide these choices. (§§ 1170, subd. (a)(2), 1170.3; Cal. Rules of Court, rules 401, 403, 406(b) (hereafter rules); *People* v. *Wright* (1982) 30 Cal.3d 705, 709-713 [180 Cal.Rptr. 196, 639 P.2d 267].) [¶] The statutes and sentencing rules generally require the court to state 'reasons' for its discretionary choices on the record at the time of sentencing. (§§ 1170, subds. (b) & (c), 1170.1, subd. (h), 1202.4, subd. (a).)" (9 Cal.4th at p. 349.)

"[T]he purpose for requiring the court to orally announce its reasons at sentencing is clear. The requirement encourages the careful exercise of discretion and decreases the risk of error. In the event ambiguities, errors, or omissions appear in the court's reasoning, the parties can seek an immediate clarification or change." (9 Cal.4th at p. 351.)

Even if we assume that *Scott* limited its holding and applied the waiver rule only to what it characterized as discretionary sentencing choices, we observe that among these "choices" cited by *Scott* is the rule stated in section 1170, subdivision (c). "The court shall state reasons for its sentence choice on the record at the time of sentencing." As the Attorney General contends, this rule is phrased in the same mandatory language as rule 433(b).

Again, rule 433(b) provides: "If the imposition of sentence is to be suspended during a period of probation after a conviction by trial, the trial judge shall make factual findings as to circumstances which would justify imposition of the upper or lower term if probation is later revoked, based

upon evidence admitted at the trial." Courts have explained, "The purpose of rule 433(b) is to assist a later court, upon revocation of probation, to determine what mitigating or aggravating circumstances existed at the time probation was originally granted." (*People* v. *McKinzie* (1982) 134 Cal.App.3d 1016, 1019 [184 Cal.Rptr. 884]; *People* v. *Gunn* (1983) 143 Cal.App.3d 887, 889 [192 Cal.Rptr. 218].) The mandate of rule 433(b) only takes effect after a trial court makes the sentencing choices to grant probation and to suspend imposition of sentence.

Since the waiver rule applies to the mandate of section 1170, subdivision (c), it should apply equally to the mandate of rule 433(b). It would be anomalous for *Scott* to require a contemparaneous objection to the general choice of granting or denying probation, but to excuse an objection to finding contigent on the grant of probation.

Moreover, careful consideration of rule 433(b) reveals that what it mandates are virtually the same discretionary choices involved in selecting the lower, middle, or upper term of imprisonment under section 1170, subdivision (b). As explained in *Scott, supra*, ". . . the court may impose the upper or lower term of imprisonment only where the balance of aggravating or mitigating factors cited in support of that choice 'weighs' against imposition of the middle term. (Rule 420(a) & (b).) [Fn. omitted.]" (9 Cal.4th at p. 350.) While rule 433(b) does not involve imposition of sentence, it still requires the sentencing court to weigh and classify any aggravating and mitigating factors relevant to imposing the upper or lower term if probation is later revoked.

For these reasons, we conclude that the failure of the trial court to make findings pursuant to rule 433(b) is subject to the waiver rule announced by *Scott*. Defendant is barred from raising this contention for the first time on appeal because his trial counsel did not assert it at sentencing.

Defendant finally argues that his trial counsel was ineffective in failing to make this objection. We are unpersuaded.

In any event, as the Attorney General contends, defendant cannot demonstrate prejudice from the failure to object. Defendant is not prejudiced by the mere absence of findings. In order to show prejudice, defendant must show that any future findings are likely to be less favorable than he would have received at sentencing. (Cf. *People* v. *Williams* (1988) 44 Cal.3d 1127, 1153 [245 Cal.Rptr. 635, 751 P.2d 901]; *People* v. *McLeod* (1989) 210 Cal.App.3d 585, 590-591 [258 Cal.Rptr. 496].) This does not appear from the record.

*Disposition*

The judgment is affirmed.

Cottle, P. J., and Mihara, J., concurred.

A petition for a rehearing was denied July 2, 1996, and appellant's petition for review by the Supreme Court was denied September 18, 1996.