Filed 2/1/16  P. v. Gutierrez CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B258235 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA416718) |
| v. | |
| MARIA GUTIERREZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Henry J. Hall, Judge.  Affirmed.

Michael Ian Garey for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Stacy S. Schwartz and David A. Voet, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Following the denial of her motion to suppress evidence, Maria Gutierrez pleaded guilty to possession of marijuana for sale, possession of cocaine base for sale and possession of methamphetamine for sale. On appeal Gutierrez contends that evidence of those crimes should have been suppressed as the fruits of an illegal search conducted pursuant to an invalid search warrant. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 23, 2013 Los Angeles Police Officer Brandon Walthers received information from a confidential informant that a person known as "Maria" possessed approximately 30 to 40 pounds of marijuana in the "rear portion" of her residence at 348 East 80th Street. The informant had observed the marijuana after being escorted through the back door of Maria's house. Walthers prepared an affidavit and obtained from a magistrate a warrant to search the residence at 348 East 80th Street.[1] Before executing the warrant, Walthers conducted a short surveillance of the home from the street and noticed the address numerals 348 on the northern facing wall near the front door of the house. He did not get out of the car or walk toward the back of the house to get a better view of the rear door described by the informant because he did not want to risk being noticed and compromise the investigation.

On September 25, 2013 Officer Walthers and eight to 10 additional law enforcement officers executed the search warrant by going directly to the rear door of the house. After providing "knock-notice"[2] and receiving no response, the officers forcibly

---

[1]    Because the information contained in the affidavit to obtain the warrant was provided by a confidential informant, the affidavit was sealed. Pursuant to *People v. Hobbs* (1994) 7 Cal.4th 948, 959, at the joint preliminary/suppression hearing Gutierrez asked the court to conduct an in camera inspection to determine how much of the affidavit, if any, could be unsealed without compromising the informant's identity. Following its in camera inspection, the court unsealed the portions of the affidavit described above.

[2]    The term "knock-notice" refers to the requirement of Penal Code section 1531 and its federal counterpart (18 U.S.C. § 3109) that a law enforcement officer, before entering a house to execute a warrant, give notice of his or her authority and purpose and be

entered, immediately conducted a "protective sweep" of the residence for individuals and took Gutierrez into custody.[3] Upon entering the premises Walthers realized for the first time the single structure he had identified in the search warrant affidavit as 348 East 80th Street was subdivided into two separate living units, one situated behind the other. Rather than entering the back door of 348 East 80th Street, Walthers had entered the front door of 350 East 80th Street (unit 350); 348 East 80th Street (unit 348) was the address for the front dwelling. At about the same time as police made their forced entry into unit 350, the residents of unit 348 came outside and confirmed that the house was a duplex and they lived in the front residence. Police conducted a protective sweep of unit 348 making sure no other individuals were in that residence. Then, without obtaining a new warrant, police searched Gutierrez's residence (unit 350), where they found illicit drugs, $10,000 in cash and a rifle.

Gutierrez moved pursuant to Penal Code section 1538.5 to suppress the contraband seized from her residence on the ground the warrant inaccurately described the premises to be searched as 348 East 80th Street, not 350 East 80th Street, and was therefore invalid. She argued the police knew or should have known the structure was a duplex before they obtained the warrant, or at a minimum, before they entered, and could not claim they had acted in good faith reliance on an invalid warrant. At the joint preliminary hearing/suppression hearing, Gutierrez presented photographic evidence showing two mailboxes in the front of the structure with two different addresses. One mailbox contained the numerals 348; the other, 350. In addition, the front wall of the structure displayed two address plaques. The top plaque denoted "350"; the one beneath

refused admittance either actually or constructively. The requirement is a product of the Fourth Amendment's prohibition of unreasonable searches and seizures. (*Wilson v. Arkansas* (1995) 514 U.S. 927, 931 [115 S.Ct. 1914, 131 L.Ed.2d 976].)

3      "A 'protective sweep' is a quick and limited search of premises, incident to [a search or] an arrest and conducted to protect the safety of police officers or others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding." (*Maryland v. Buie* (1990) 494 U.S. 325, 327 [110 S.Ct. 1093, 108 L.Ed.2d 276]; accord, *People v. Celis* (2004) 33 Cal.4th 667, 677.)

it, "348." On cross-examination Officer Walthers denied noticing the mailboxes, address plaques or any other indicia of a duplex before obtaining and executing the warrant.

Relying on *People v. Amador* (2000) 24 Cal.4th 387 (*Amador*) the trial court denied Gutierrez's suppression motion, concluding the discrepancy between the address in the warrant and Gutierrez's address did not invalidate the warrant or render the search unlawful; the search was conducted at the intended, targeted premises for which there was probable cause to search.

Following the denial of her motion to suppress evidence, Gutierrez pleaded guilty pursuant to a negotiated agreement to three counts: possession of marijuana for sale (count 1) (Health & Saf. Code, § 11359), possession of cocaine base for sale (count 3) (Health & Saf. Code, § 11351.5) and possession of a controlled substance, methamphetamine, for sale (count 5) (Health & Saf. Code, § 11378). Three other counts were dismissed pursuant to the plea agreement. The court suspended imposition of sentence and placed Gutierrez on five years' formal probation with the condition that she serve 180 days in county jail.

## DISCUSSION

1. *Governing Law and Standard of Review*

The Fourth Amendment, applicable to the States by the Fourteenth Amendment, prohibits unreasonable searches and seizures. (U.S. Const. 4th Amend.; *People v. Camacho* (2000) 23 Cal.4th 824, 830-831.) A search is presumptively reasonable, and thus in compliance with the Fourth Amendment, if supported by a warrant describing with particularity the thing or the place to be searched. (U.S. Const., 4th Amend.; see *People v. Weiss* (1999) 20 Cal.4th 1073, 1082.) "'The manifest purpose of this particularity requirement [is] to prevent general searches. By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit.'" (*Amador, supra,* 24 Cal.4th at p. 392; accord, *Maryland v. Garrison* (1987) 480 U.S. 79, 84 [107 S.Ct. 1013, 1016, 94 L.Ed.2d 72].)

4

To satisfy the particularity requirement, "[c]omplete precision in describing the place to be searched is not required." (*Amador, supra,* 24 Cal.4th at p. 392; accord, *People v. Minder* (1996) 46 Cal.App.4th 1784, 1788.) "'It is enough if the description is such that the officer with a search warrant can with reasonable effort ascertain and identify the place intended.'" (*Amador,* at p. 392; accord, *Steele v. United States* (1925) 267 U.S. 498, 503 [45 S.Ct. 414, 416, 69 L.Ed. 757].) Under this standard neither an inaccurate description of the premises nor the wrong address is necessarily fatal to the warrant's validity. (*Amador,* at p. 392 ["[m]any cases have upheld warrant searches despite errors in the description of the place to be searched" or the wrong address]; *People v. Superior Court* (*Fish*) (1980) 101 Cal.App.3d 218, 222 ["'[a] mistaken address does not invalidate a warrant per se'"]; *People v. Lovett* (1978) 82 Cal.App.3d 527, 531 [same].) "When the warrant contains an inaccurate description, '[t]he test for determining the sufficiency of the description of the place to be searched is whether the place to be searched is described with sufficient particularity as to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premise might be mistakenly searched.'" (*Amador,* at p. 393.)

The question whether relevant evidence obtained by assertedly unlawful means— that is, in violation of the Fourth Amendment—must be excluded is determined by deciding whether its suppression is mandated by the federal Constitution. (Cal. Const., art. I, § 24; see *People v. Schmitz* (2012) 55 Cal.4th 909, 916; *People v. Lomax* (2010) 49 Cal.4th 530, 564, fn. 11.) A defendant claiming the search warrant or supporting affidavit is constitutionally deficient bears the burden in the trial court of alleging and proving the deficiency. (*Amador, supra,* 24 Cal.4th at p. 393; *Franks v. Delaware* (1978) 438 U.S. 154, 171-172 [98 S.Ct. 2674, 57 L.Ed.2d 667].) In reviewing the trial court's ruling on a motion to suppress, the appellate court defers to the trial court's factual findings, express or implied, when supported by substantial evidence. However, whether a mistake in the description of the premises makes the warrant constitutionally invalid is a question of law that the reviewing court decides independently. (*Amador,* at p. 393;

accord, *People v. Kraft* (2000) 23 Cal.4th 978, 1041; *People v. Minder, supra,* 46 Cal.App.4th at p. 1788.)

### 2. *The Trial Court Did Not Err in Denying Gutierrez's Motion To Suppress*

#### a. *The error in the description of the address did not invalidate the warrant*

In denying Gutierrez's motion, the trial court relied extensively on *Amador, supra,* 24 Cal.4th 387, in which the Supreme Court addressed the validity of a warrant that listed an address different from the one for the premises ultimately searched. As described in *Amador,* after receiving information from a confidential informant, a police detective obtained a warrant to search "a two story" residence at "10817 Leland." In fact, the house the informant had shown the detective, and the house the detective intended to and did search, was a single story house located at 10811 Leland (the defendant's house). The defendant moved to suppress the contraband found in his home, arguing the warrant was invalid because it authorized the search of a different style structure at a different address.

The Supreme Court held the errors in the description of the premises did not invalidate the warrant. Although the warrant contained the wrong address and an incorrect description of the structure, it nevertheless "described the house in several other particulars," and there was no evidence that any other house existed that so closely matched the warrant's description. (*Amador, supra,* 24 Cal.4th at pp. 394-395.) In ruling the mistake insufficiently material to invalidate the warrant, the Court found significant the fact the officer who had supplied the affidavit to obtain the warrant had also personally executed the search. "[T]he risk of searching the wrong house is slight when the affiant, who knew exactly what house the magistrate authorized to be searched, also executed the warrant." (*Id.* at p. 395.) "The warrant and the officer's knowledge together leave no doubt that the magistrate found probable cause to search one particular house to the exclusion of all others, i.e., the house actually searched." (*Ibid.*)[4]

---

[4] The *Amador* Court cautioned, however, "[T]he executing officer's personal knowledge may not cure all deficiencies or completely substitute for a description in the warrant. It is but a factor to consider." (*Amador, supra,* 24 Cal.4th at p. 395.)

6

Gutierrez attempts to distinguish *Amador,* emphasizing in that case there was no evidence another house was likely to have been searched as a result of the mistake in the address or the description. In contrast, she argues, here not only was it likely the wrong residence would be searched based on the incorrect address in the warrant, but also such a search in fact occurred: After entering and securing unit 350, police then entered and secured unit 348 under color of warrant before beginning a more comprehensive search of Gutierrez's residence.

Contrary to Gutierrez's contention, entry into unit 348 for the sole purpose of conducting a protective sweep prior to executing the warrant on Gutierrez's residence does not bolster Gutierrez's assertion a reasonable likelihood existed that the wrong residence would be searched. At the threshold, Gutierrez had no reasonable expectation of privacy in unit 348 and thus may not object to any search of it. (*People v. Camacho, supra,* 23 Cal.4th at pp. 830-831 [to assert Fourth Amendment violation, resident must have reasonable expectation of privacy in place searched].) Moreover, law enforcement's entry into unit 348 did not result from a lack of particularity in the warrant. To the contrary, the record is clear the officers entered unit 348, after securing unit 350, solely to protect their safety before searching Gutierrez's residence. No broader search of unit 348 pursuant to the warrant was conducted.[5]

Gutierrez's reliance on *United States v. Collins* (9th Cir. 1987) 830 F.2d 145 (*Collins*) is misplaced. In *Collins* police obtained a warrant to search 373 Springdale

---

5     Officer Walthers testified on direct examination the police had entered unit 348 with its residents' consent. On cross-examination he acknowledged the police had told the residents of unit 348 they had a search warrant. The record is unclear whether the reference to the warrant was the basis for the purported consent to enter the unit. (See *Bumper v. North Carolina* (1968) 391 U.S. 543, 550 [88 S.Ct. 1788, 20 L.Ed.2d 797] [acquiescence to a claim of lawful authority is not consent].) Of course, under the circumstances it is questionable whether a warrant to conduct a protective sweep was necessary at all. (See generally *People v. Celis, supra,* 33 Cal.4th at pp. 676-677 ["[o]ne recognized exigent circumstance that will support the warrantless entry of a home—the risk of danger to police or others on the scene—also provides the justification for a 'protective sweep' of a residence"].)

7

Street, Sebastopol, described in the initial warrant as "'a single story wood framed residence, white in color with a dark composition roof'" and "'the last house on the east side of Springdale Street.'" Before executing the warrant, police obtained an amendment to it, altering the address in the warrant to "'300 Springdale Street'" and describing it as "'the last house on the west side.'" Based on the description in the amended warrant, police entered and searched 300 Springdale Street and found nothing. Realizing that the address searched was not, in fact, the last house on the west side, police then entered a different address under color of warrant—the last house on the west side of the street— and found contraband. The *Collins* court held the warrant was invalid to support the second search because it did not describe the place to be searched with sufficient particularity: "The police were remarkably unparticular. They got the street address wrong twice. They got the sides of the street wrong once. They did not have a physical description that brought them to the right place. [Citation.] There was not only a reasonable probability that another premise might mistakenly be searched, but another premise was searched." (*Id.* at pp. 145-146.) The *Collins* court also rejected the People's argument that police had acted in good faith in reliance on what they believed to be a valid warrant: "As the officers were reckless in preparing their affidavit, they are not protected by good faith reliance on the warrant." (*Id.* at p. 146.)

Gutierrez's argument conspicuously omits the fact that here, as in *Amador,* the same officer who had obtained the warrant also executed it, knowing exactly the premises he intended to search. Under these circumstances there was no reasonable possibility the wrong residence, for which there was no probable cause, would be searched. (See *Amador, supra,* 24 Cal.4th at p. 393 [distinguishing *Collins*; because the officer executing the warrant was the same one who obtained it, he was "easily able to locate and identify the specified premises, and there was little probability that another premise would be mistakenly searched"].)

Gutierrez's effort to liken this case to *People v. MacAvoy* (1984) 162 Cal.App.3d 746 also misses the mark. In that case police sought a warrant to search Neil MacAvoy's residence believing he was involved in possessing or selling illicit drugs. The warrant

8

authorized a search of a "two-story, multi room" fraternity house.  Police entered the fraternity house, searched only MacAvoy's room, unit no. 112, and found illicit drugs.  No other room was searched.  MacAvoy moved to suppress the evidence on the ground the warrant was void on its face because it failed to adequately describe the limited place to be searched.  The appellate court agreed, explaining, "'[W]hen a warrant directs a search of a multiple occupancy apartment house or building, absent a showing of probable cause for searching each unit or for believing that the entire building is a single living unit, the warrant is void and a conviction obtained on evidence seized under it cannot stand.'"  (*Id.* at p. 754; see also *id.* at pp. 754-755 ["[o]n its face, the warrant would allow the officers to search every part of the fraternity house; since probable cause existed to search appellant's room only, the warrant, as a general rule, is void"]; *United States v. Bershchansky* (2d. Cir. 2015) 788 F.3d 102, 111-112 [officer who knew suspect lived in multi-unit dwelling had duty to identify with particularity the unit to be searched; identification of wrong apartment in affidavit and warrant precluded search of other unit not stated in warrant].)[6]

Unlike the situation in *MacAvoy,* the warrant here was not overly broad.  To the contrary, apart from the mistake in the address, it described with requisite particularity a single residence to be searched.  Although the warrant misidentified the correct address, the officer who executed the warrant knew exactly where to search; and the search was

---

[6]     In *MacAvoy* the Attorney General acknowledged the warrant was facially overbroad but argued the deficiency was cured by the supporting affidavit, which identified MacAvoy's apartment as room number 112 of the fraternity house.  The *MacAvoy* court recognized an affidavit describing the premises with particularity could remedy a deficient warrant when "(1) the affidavit accompanies the warrant at the time it is served, and (2) the warrant uses suitable words of reference which incorporate the affidavit by reference" (*MacAvoy, supra,* 162 Cal.App.3d at p. 755), but found no basis to consider the affidavit in that case because the warrant did "not in any way incorporate the affidavit by reference," and "there [wa]s no evidence that the affidavit accompanied the warrant at the time of service."  (*Id.* at p. 758.)  Here, there is no need to consider whether the affidavit cured any defect in the warrant because the warrant itself was not facially invalid.

conducted at the intended, targeted premises for which there was probable cause. (Cf. *United States v. Bershchansky, supra,* 788 F.3d at pp. 111-112.)

*Maryland v. Garrison, supra,* 480 U.S. 79, also does not assist Gutierrez. There, police officers obtained a warrant to search a person named McWebb and "'the premises known as 2036 Park Avenue third floor apartment'" for controlled substances and related paraphernalia. (*Id.* at p. 80.) When they obtained the warrant, the police believed there was only a single apartment on the third floor. When they executed the warrant and began searching the apartment, the officers discovered illegal drugs and other contraband. After they found the contraband, however, the officers realized there were actually two apartments on the third floor: one belonging to McWebb; the other to Garrison. The contraband was found in Garrison's apartment. As soon as they became aware of the fact that there were two apartments, police limited their search to McWebb's residence and discontinued any search of Garrison's residence.

Garrison moved to suppress the evidence found in his apartment, contending the warrant was overly broad and void on its face and the warrantless search of his apartment, based on probable cause to search McWebb's home, was unreasonable. The Supreme Court held the motion was properly denied. As to the validity-of-the-warrant argument, the Court explained that, if the officers knew, or should have known, there were two separate dwelling places on the third floor, they would have been obligated to expressly exclude Garrison's apartment from the scope of the requested warrant because they lacked any probable cause to search Garrison's home. However, because "[t]he validity of the warrant must be assessed on the basis of the information that the officers disclosed or had a duty to discover and to disclose to the issuing [m]agistrate" (*Maryland v. Garrison, supra,* 480 U.S. at p. 85) and there was no evidence the officers knew about Garrison's third floor apartment, the Court held the warrant, "insofar as it authorized a search that turned out to be ambiguous in scope," was valid when issued. (*Id.* at p. 85.) The Court also observed the warrant was based on probable cause to search McWebb's home; therefore, any duty to cease searching and obtain a new warrant was limited to Garrison's home, not to McWebb's. (See *id.* at p. 88.)

Relying on language in *Maryland v. Garrison, supra,* 480 U.S. 79, Gutierrez contends there was evidence from which law enforcement "knew or should have known" that two residences existed—two address placards and twin mailboxes in front of the building—and Officer Walthers was obligated to narrow the scope of his affidavit to the proper address when he sought the warrant from the magistrate. His failure to do so, Gutierrez asserts, invalidates the warrant. Gutierrez's argument, however, disregards the trial court's finding accepting as credible Officer Walthers's testimony that he did not notice the mailboxes or small placards and its implied finding that Walthers was not negligent in overlooking those items. In preparing the affidavit, Walthers identified the large numerals on the front of the door facing the street that listed the address of the building as 348 East 80th Street. He explained he had been unable to view the back of the residence without compromising the investigation because the rear door, with the numerals 350 above it, was not visible from the street. The trial court found Walthers neither knew nor should have known the building was a duplex before obtaining the warrant. Although it is possible a fact finder could have reached a different conclusion, we cannot say the trial court's determination as to constructive notice was improper as a matter of law. (See *id.* at p. 85; see generally *Palmer v. City of Long Beach* (1948) 33 Cal.2d 134, 137-138 [refusing to decide issue of constructive knowledge as matter of law; question of constructive notice generally for fact finder to decide].)

Gutierrez contends that, even if the initial entry into unit 350 was valid, as soon as law enforcement officers realized the warrant contained an inaccurate address it should have ceased the search of her unit and obtained a new warrant. The *Amador* Court considered and rejected a similar argument: "Defendant also argues that as soon as Detective Gulickson realized the warrant's description of the house was not entirely accurate, he should have contacted the magistrate to obtain an amended warrant. However, no reason appears for him to have done so. The reason for requiring a warrant is 'that it provides the detached scrutiny of a neutral magistrate, which is a more reliable safeguard against improper searches than the hurried judgment of a law enforcement officer "engaged in the often competitive enterprise of ferreting out crime."' [Citation.]

When the police obtain a warrant, the 'authority of the executing officer and his need to search are carefully reviewed,' and '[l]imits are imposed on the search through the requirement of particularity.' [Citation.] Here, the police *did* obtain a warrant. A neutral and detached magistrate *did* determine that probable cause to search existed. The warrant limited the search to one particular house—the house the informant showed the police. The magistrate specifically authorized a search of that house, which was the house actually searched. The exact address or description was not critical to the magistrate's probable cause determination. The error in stating the address or number of stories . . . could not have affected the probable cause determination or authorization to search that house. The search did not result, and could not reasonably have resulted, in the police searching any place for which they did not have advance judicial authorization." (*Id.* at p. 396.) The *Amador* Court's analysis applies equally to, and fully disposes of, Gutierrez's identical argument.

Finally, Gutierrez and the Attorney General also dispute whether the law enforcement officers acted in good faith in searching unit 350 once they realized the address was different from that identified in the warrant. The good faith exception to the warrant requirement is necessarily considered only when the warrant itself is invalid. (*People v. Machupa* (1994) 7 Cal.4th 614, 623; see *Illinois v. Krull* (1987) 480 U.S. 340, 348 [107 S.Ct. 1160, 94 L.Ed.2d 364] [exclusionary rule not properly applied "to evidence obtained by police officer whose reliance on a search warrant issued by a neutral magistrate was objectively reasonable, even though the warrant was ultimately found defective"]; *United States v. Leon* (1984) 468 U.S. 897, 920 [104 S.Ct. 3405, 82 L.Ed.2d 677 [same].) Because the warrant was valid and the search of Gutierrez's residence proper, we need not address the good faith exception to the warrant requirement.

## DISPOSITION

The judgment is affirmed.

PERLUSS, P. J.

We concur:

ZELON, J.

BLUMENFELD, J.[*]

---

[*]  Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.