[Civ. No. 18742. Third Dist. Jan. 21, 1980.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF MONO COUNTY, Respondent;
ROBERT JOHN FISH, Real Party in Interest.

COUNSEL

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Eddie T. Keller, Gary A. Binkerd and Dave DeAlba, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Forstenzer & Rudder and Edward Forstenzer for Real Party in Interest.

OPINION

**EVANS, J.**—The People seek appellate review of an order granting a motion to suppress evidence obtained pursuant to a warrant. The sole issue presented is whether the warrant adequately described the premises to be searched. For the reasons which follow, we hold the warrant to be sufficient.

FACTS

The search warrant, issued January 20, 1979, authorized a day or night search of the premises of "Lot #13, Mammoth Camp Tract #2, Mammoth Lakes, CA, the corner lot of Shadow and Glasscock Streets, on the south side of Glasscock, east side of Shadow, the front door facing south or southerly." The warrant further described the premises as a two-story residential home, of wood construction, with a green roof, and occupied by real party in interest Robert Fish. The search warrant additionally authorized a search of Fish's person, describing him as a male Caucasian, age 26, 6 feet, 1 inch in height, 145 pounds, with blonde hair and hazel eyes. It also specifically provided that the search was for cocaine.

On January 20, 1979, Mono County Sheriff's Investigator Charles Strong went to Mammoth Camp Tract No. 2 to execute the search warrant. He also had a warrant for Fish's arrest; a copy of Fish's driver's license, including his description and photograph, accompanied that warrant.

The roads in the tract had not been cleared of snow and were indistinguishable. The investigator was unaware of the course of the streets as there were only footpaths which did not follow any particular roadway. It was dark, and the streets were not described by street signs, and none of the residences bore house numbers.

The officer first attempted to execute the search warrant at a house 100 to 150 feet from the Fish residence.[1] He then walked up a pathway to a two-story house of wood construction. Strong could not recall if the roof was green as it was at least one-third covered with snow, and at 7 p.m. it was dark. While on the pathway approaching the front porch of the house, Strong observed Fish, a woman, and a child sitting in the living room through the front window next to the front door. He recognized Fish from the description and photograph accompanying the arrest warrant. The officer knocked on the door and Fish answered. In response to the officer's question, Fish identified himself. Strong then asked if the house were his residence, and Fish responded that it was. The arrest warrant was then executed, and a search of the house was conducted.

Fish was held to answer on violations of Health and Safety Code sections 11350 (possession of cocaine), 11352 (sale of cocaine), and 11358 (cultivation of marijuana).

Fish's residence was not located on lot 13, but rather on lot 1-D. Lot 13 was located on the southeast corner of the intersection of Glasscock and Shadow. Fish's house was located across Glasscock Street from and one lot east of lot 13. Fish also testified that his house had a silver metal roof.

The erroneous lot description for Fish's residence had been obtained from telephone company records listing Fish as residing on lot 13, rather than on lot 1-D. The street location description of lot 13 (corner lot of Shadow and Glasscock Streets, south side of Glasscock, east side of Shadow) was obtained after law officers located lot 13 on a county map.

---

[1]Other than by distance, the record does not indicate where this house was located in relation to Fish's house, and contrary to real party's assertion, the record does not show whether or not this house was located upon lot 13.

Fish's renewed Penal Code section 1538.5 motion to suppress as evidence the property seized in the search was granted by the superior court after an earlier denial at the preliminary hearing. The People's sole contention in this petition for writ of mandate is that the warrant adequately described the premises to be searched.

DISCUSSION

Constitutional mandates, codified by statute, ensure that a search warrant may not issue except upon probable cause, supported by affidavit, naming or describing the person, and particularly describing the property and the place to be searched. (U. S. Const., 4th Amend. Cal. Const., art. I, § 13; Pen. Code, § 1525.)

It is constitutionally essential to the validity of a search warrant that it describe the place to be searched with particularity. (*People v. Fitzwater* (1968) 260 Cal.App.2d 478, 486 [67 Cal.Rptr. 190]; *People v. Estrada* (1965) 234 Cal.App.2d 136, 145-146 [44 Cal.Rptr. 165, 11 A.L.R.3d 1307].) However, "A mistaken address does not invalidate a warrant per se. [Citations.]" (*Tidwell v. Superior Court* (1971) 17 Cal. App.3d 780, 787 [95 Cal.Rptr. 213].)

The requirement that the warrant particularly describe the place to be searched is met if the description is sufficiently definite that the officer conducting the search can with reasonable effort ascertain and identify the place intended. (*Steele v. United States* (1925) 267 U.S. 498, 503 [69 L.Ed. 757, 760, 45 S.Ct. 414]; *People v. Dumas* (1973) 9 Cal.3d 871, 880 [109 Cal.Rptr. 304, 512 P.2d 1208]; *Tidwell v. Superior Court, supra*, 17 Cal.App.3d at p. 787; *People v. Coulon* (1969) 273 Cal.App.2d 148, 152 [78 Cal.Rptr. 95]; *People v. Estrada, supra*, 234 Cal.App.2d at pp. 145-146; *People v. Fitzwater, supra*, 260 Cal. App.2d at p. 486.)

In *Tidwell v. Superior Court, supra*, 17 Cal.App.3d 780, the warrant stated that the premises to be searched were located at 1360 Laurel Avenue, Redding, California. The premises in fact searched were located at 1860 Laurel Avenue in Redding. The mistake in the address was held not to invalidate the warrant as the evidence showed that there was only one Laurel Avenue in Redding, it was only one block long, and all the addresses on the block were in the 1800's. The court held that the description in the warrant was sufficient to enable the officers,

with reasonable effort, to ascertain and identify the place for which the magistrate intended to authorize a search. (*Id.*, at p. 787.)

In *People* v. *Lovett* (1978) 82 Cal.App.3d 527 [147 Cal.Rptr. 136], the warrant described the premises to be searched as 1227½ West Washington Boulevard, a two-story building, tan brick in front. The warrant also authorized a search of the defendant by name, also known as Hippy Charles. The warrant was based on an affidavit in which the affiant-officer stated he had been told by a confidential informant that heroin was being sold and used at 1227½ West Washington Boulevard by a man named Hippy Charles. With the informant's cooperation, a controlled buy of heroin from Hippy Charles had occurred earlier at premises described as 1227½ West Washington Boulevard. The premises actually searched was defendant's second-hand goods store located at 1227 West Washington Boulevard. The premises at 1227½ had been carved out of the store at 1227 about 10 months before the search. Prior to that time, 1227½ was part of the defendant's store. At the time of the search the premises at 1227½ were vacant. The source of the error was the placement of the numbers outside the two shops, which led the affiant to believe the defendant's store was 1227½. In holding the mistake in the address did not invalidate the warrant the court stated at pages 531-532: "It is clear that the misdescription of the premises as '1227½' rather than '1227' affected no substantial right of defendant. *The magistrate obviously intended to authorize a search of the premises which were in fact searched, that is the premises occupied by defendant*, which were inferentially the premises to which the confidential informant had referred and the premises from which the controlled buy had been made. Far more serious problems would have arisen had the police attempted to search the premises at 1227½ about which nothing whatever had been said in the affidavit in support of the warrant. (Cf., *Tidwell* v. *Superior Court* (1971) 17 Cal.App.3d 780, 787 [95 Cal.Rptr. 213].) *If one thing is clear, it is that the magistrate intended to authorize a search of the premises occupied by 'Hippy Charles' whether the street designation was 1227 or 1227½.*" (Fn. omitted; italics ours.)

Real party takes issue with the language used in *Lovett* that "[t]he magistrate obviously intended to authorize a search of the premises which were in fact searched, . . ." (82 Cal.App.3d at p. 531), arguing that if such were the conclusive legal criteria for a particular description of the place to be searched, then the only requirement for a place

description in a search warrant would be "'the residence of John Doe.'" We disagree.

In cases involving some error, omission, or ambiguity on the face of the warrant, the importance of the magistrate's intention lies in the interposition of that magistrate's permission between the police and the citizen and the objectives to be achieved by that interposition. (See *People* v. *Lovett, supra,* 82 Cal.App.3d 527; *People* v. *Moore* (1973) 31 Cal.App.3d 919, 927 [107 Cal.Rptr. 590].) In a general sense, the requirement that law enforcement officers obtain a search warrant based on probable cause before searching and seizing property, unless some other basis exists to allow the search, is based on the desirability of having neutral and detached magistrates determine when searches and seizures are permissible and what limitations should be placed upon such activities. (*Trupiano* v. *United States* (1948) 334 U.S. 699, 705 [92 L.Ed. 1663, 1669, 68 S.Ct. 1229], overruled on other grounds in *United States* v. *Rabinowitz* (1950) 339 U.S. 56 [94 L.Ed. 653, 70 S.Ct. 430].) More specifically, the rationale of the requirement of a particular description of the place to be searched and the objects to be seized is the prevention of general searches and the seizure of objects under a warrant describing other objects. (*Marron* v. *United States* (1927) 275 U.S. 192, 196 [72 L.Ed. 231, 237, 48 S.Ct. 74].) Without a warrant particularly describing the place to be searched and the things to be seized, officers have the unbridled discretion to determine for themselves the extent of the search; the difference much affects "the potency of the right of privacy." (*Trupiano* v. *United States, supra,* 334 U.S. at p. 710 [92 L.Ed. at p. 1672].)

Finally, it has been noted that the purpose of the exclusionary rule is "...to deter illegal police conduct, not deficient police draftsmanship...." (*People* v. *Christian* (1972) 27 Cal.App.3d 554, 561 [103 Cal.Rptr. 740].) Moreover, there is a strong policy favoring search by warrant rather than upon other allowable basis. (*Ibid.*; *People* v. *Moore, supra,* 31 Cal.App.3d at p. 923.)

■ Here the officers did obtain a search warrant, a fair reading of which clearly discloses that the magistrate intended to authorize a search of John Fish's house and person for cocaine. In no way did the warrant authorize a general search. Here, as in *Lovett,* the warrant would not have permitted a search of any other house except that of Fish, since probable cause to search existed only for Fish's house. The

warrant did not lack particularity in the description of the place to be searched; it lacked complete accuracy in describing Fish's residence. The error in the description of the lot number and the resulting erroneous geographical description stemmed from the misinformation furnished by the telephone company; the error did not originate from police misconduct. The residences in the subdivision in which Fish's house was located did not have house numbers, nor were the streets described by signs. Thus the more conventional method of identifying a particular residence by street number was not available to the officers. Moreover, fallen snow obliterated the courses of the streets of the subdivision, and in fact made them indistinguishable, and it was dark. Despite the mistake in the warrant, the officer, expending reasonable effort in view of the obstacles presented, was able to locate and ascertain the premises for which the magistrate intended to authorize a search. (*Tidwell* v. *Superior Court, supra,* 17 Cal.App.3d 780.) Prior to executing either the arrest warrant or the search warrant, the officer confirmed that the person confronted was in fact John Fish and that the residence was his. The house searched was a two-story house of wood construction in Mammoth Camp Tract No. 2 as described in the warrant. Under the facts presented, the error in the lot description was not so material as to invalidate the warrant. We fail to discern any offense to Fourth Amendment principles in the record presented.

Let a peremptory writ of mandate issue directing the Superior Court of the County of Mono to vacate its suppression order dated June 5, 1979, granting real party's motion to suppress evidence seized in the search of his residence on January 20, 1979, and further directing respondent court to enter an order denying the motion to suppress. The temporary stay of trial proceedings is ordered terminated upon service of the peremptory writ.

Puglia, P. J., and Reynoso, J., concurred.

A petition for a rehearing was denied February 15, 1980, and the petition of the real party in interest for a hearing by the Supreme Court was denied March 20, 1980.