100 Cal.Rptr.2d 617 (2000)
24 Cal.4th 387
9 P.3d 993
The PEOPLE, Plaintiff and Respondent,
v.
Luis AMADOR, Defendant and Appellant.
No. S081969.
Supreme Court of California.
October 16, 2000.
*619 Judith Kahn, Ukiah, under appointment by the Supreme Court, for Defendant and Appellant.
Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Victoria Bedrossian, Mary Sanchez, John Gorey and Steven E. Mercer, *620 Deputy Attorneys General, for Plaintiff and Respondent.
*618 CHIN, J.
A police officer had probable cause to search a house after an informant pointed it out to him. He obtained a warrant to search that house, preparing and signing the supporting affidavit himself, and he personally executed the warrant on the house the informant had shown him. The warrant's description and address of the house to be searched differed somewhat from the description and address of the actual house. We must decide whether these differences require suppression of the evidence the officer obtained in the search.
We conclude we need not suppress the evidence under the circumstances. Accordingly, we reverse the judgment of the Court of Appeal, which ordered the evidence suppressed.

I. Factual and Procedural History
On February 26, 1997, Detective Grant Gulickson and another City of Brea police officer executed a search warrant on a house in which defendant lived. About five to six weeks earlier, an informant had pointed the house out to Detective Gulickson and another detective as the three drove by it. The other detective took notes while Detective Gulickson drove and observed the house. Detective Gulickson testified that after they drove by the house, they turned away so as not to "be identified as police" and not have the informant "seen by anybody in the house."
Detective Gulickson prepared the affidavit supporting the warrant, relying on the other detective's notes for the address and description of the house. The warrant commanded the search of a house with the description and address that Detective Gulickson provided: "10817 Leland, Santa Fe Springs, County of Los Angeles, State of California, further described as a brown stucco, two story single family residence with a two car, attached garage. It is brown with beige trim. The house is located on the west side of the street, south of Sundance." While executing the warrant, the officers seized methamphetamine, a loaded firearm, about 1,000 blank credit cards, and various credit cards and receipts.
Defendant moved to suppress the evidence seized pursuant to the search warrant. In his memorandum of points and authorities in support of the suppression motion, he argued that the warrant was invalid because it authorized the search of a "two story, single family residence, located at 10817 Leland, Santa Fe Springs, County of Los Angeles. However, the actual residence searched was a one story, single family residence, located at 10811 Leland, Santa Fe Springs." (Original boldface.) At the hearing on the motion, Detective Gulickson agreed that the actual address was 10811, not 10817, Leland, and that the house had a single story. He realized it was a single-story house after he was inside. He had stated in the warrant itself that the house had two stories because the other detective's notes said it did. The house he searched, however, was the same one the informant had shown him. He located the house based on his "personal knowledge of that house being identified by the informant, and then that information used as a basis for [the] search warrant."
The trial court denied the motion to suppress the evidence. The court recognized that the officer had made "two blunders" in drafting the warrant, but it found no evidence "to controvert [his] integrity." After a court trial, the court found defendant guilty of possession for sale of methamphetamine, possession of methamphetamine while armed with a loaded, operable firearm, possession of an excessive number of unauthorized access cards, and counterfeiting access cards. Defendant appealed.
The Court of Appeal reversed the judgment and ordered the trial court to grant the suppression motion. It found that the *621 officer had made three, not two, errors in drafting the search warrant. In addition to misstating the actual address of 10811 Leland as 10817 Leland, and stating the house had two stories instead of one, the Court of Appeal also found, for reasons discussed below, that the officer had "the wrong city" because the house was located in Whittier, not Santa Fe Springs. It concluded that the three errors "betray a sloppiness that goes beyond mere drafting errors and constitutes Collins recklessness. [(U.S. v. Collins (9th Cir.1987) 830 F.2d 145.)] You can't have good faith when you are so careless that you get just about everything wrong."
We granted the Attorney General's petition for review.

II. Discussion
A search warrant must "particularly describ[e] the place to be searched." (U.S. Const., 4th Amend.; Cal. Const., art. I, § 13; see also Pen.Code, § 1525.) "The manifest purpose of this particularity requirement was to prevent general searches. By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." (Maryland v. Garrison (1987) 480 U.S. 79, 84, 107 S.Ct. 1013, 94 L.Ed.2d 72.) This purposeto limit the search authorization to things and areas for which probable cause exists and avoid exploratory searches must be kept in mind in determining the validity of a warrant containing an inaccurate description of the place to be searched. "[T]he purpose of the exclusionary rule is `... to deter illegal police conduct, not deficient police draftsmanship...."' (People v. Superior Court (Fish) (1980) 101 Cal.App.3d 218, 224, 161 Cal.Rptr. 547.)
Complete precision in describing the place to be searched is not required. "It is enough if the description is such that the officer with a search warrant can with reasonable effort ascertain and identify the place intended." (Steele v. United States (1925) 267 U.S. 498, 503, 45 S.Ct. 414, 69 L.Ed. 757.) Many cases have upheld warrant searches despite errors in the description of the place to be searched. (E.g., People v. Superior Court (Fish), supra, 101 Cal.App.3d 218, 161 Cal.Rptr. 547 [wrong lot number, wrong roof color]; United States v. Turner (9th Cir.1985) 770 F.2d 1508 [wrong street address]; United States v. Gitcho (8th Cir.1979) 601 F.2d 369 [wrong address].) "Where one part of the description of the premises to be searched is inaccurate, but the description has other parts which identify the place to be searched with particularity, searches pursuant to such wan-ants have been routinely upheld." (United States v. Gitcho, supra, 601 F.2d at p. 371.) When the warrant contains an inaccurate description, "[t]he test for determining the sufficiency of the description of the place to be searched is whether the place to be searched is described with sufficient particularity as to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premise might be mistakenly searched." (Ibid.) "In applying this test, we are mindful of the general rule that affidavits for search warrants must be tested and interpreted in a common sense and realistic, rather than a hypertechnical, manner." (United States v. Turner, supra, 770 F.2d at p. 1510.)
Whether the description was sufficient is a question of law, which a reviewing court decides independently (People v. Minder (1996) 46 Cal.App.4th 1784, 1788, 54 Cal.Rptr.2d 555), but the trial court determines the underlying facts, which determination is subject to the deferential substantial evidence standard of review. (See generally People v. Leyba (1981) 29 Cal.3d 591, 596-597, 174 Cal.Rptr. 867, 629 P.2d 961.) Courts have a "strong policy *622 favoring search by warrant rather than upon other allowable basis." (People v. Superior Court (Fish), supra, 101 Cal. App.3d at p. 224, 161 Cal.Rptr. 547; see also United States v. Leon (1984) 468 U.S. 897, 914, 104 S.Ct. 3405, 82 L.Ed.2d 677; People v. Weiss (1999) 20 Cal.4th 1073, 1082-1083, 86 Cal.Rptr.2d 337, 978 P.2d 1257.) For this reason, when, as here, the police do obtain a warrant, that warrant is presumed valid. "Thus if the defendant attempts to quash a search warrant, as defendant here seeks to do, the burden rests on him." (Theodor v. Superior Court (1972) 8 Cal.3d 77, 101, 104 Cal.Rptr. 226, 501 P.2d 234.) A defendant claiming that the warrant or supporting affidavit is inaccurate or incomplete bears the burden of alleging and then proving the errors or omissions. (Franks v. Delaware (1978) 438 U.S. 154, 171-172, 98 S.Ct. 2674, 57 L.Ed.2d 667; Theodor v. Superior Court, supra, 8 Cal.3d at p. 101, 104 Cal.Rptr. 226, 501 P.2d 234; People v. Costello (1988) 204 Cal.App.3d 431, 440-441, 251 Cal.Rptr. 325.)
Applying these rules to this case, we find the executing officer was easily able to locate and identify the specified premises, and there was little probability that another premise would be mistakenly searched. "The problem is not so much one of the officers' ability to locate the area they wished to search as one of their ability accurately to describe their target." (United States v. McCain (8th Cir.1982) 677 F.2d 657, 660.)
In the trial court, defendant alleged, and the prosecution agreed, that the description of the house to be searched contained two inaccuracies: The street number was erroneously stated as 10817 rather than 10811, and the house had one story, not two. The Court of Appeal additionally believed the warrant contained a third inaccuracy: The house was in Whittier, not Santa Fe Springs. As noted above, defendant's moving papers stated that the house was located in Santa Fe Springs. However, at the suppression hearing, both defendant's sister and Detective Gulickson described the house as being in Whittier. But defendant never claimed in the superior court that 10811 Leland in Santa Fe Springs was a different address from 10811 Leland in Whittier. Indeed, at the court trial, the parties used the city designations of Whittier and Santa Fe Springs interchangeably to describe the location of the house. At one point, for example, defense counsel asked defendant about documents found at "10811 Leland in the city of Whittier/Santa Fe Springs."
After we granted review, the Attorney General asked us to notice judicially maps and information from the United States Postal Service indicating that 10811 Leland is located in an unincorporated area between Santa Fe Springs and Whittier, closer to Santa Fe Springs than to Whittier, and that both city names are associated with the ZIP Code for that address. In response, defendant does not directly dispute these facts, but he objects to the request because the evidence "is not a part of the record on appeal." The objection is well taken. These documents were not before the trial court. The facts relevant to a suppression motion should be litigated and decided at trial, not on appeal. "We decline to take judicial notice of these facts on the basis that they are evidentiary matters incident to the motion to suppress which should have been presented to the court below and are not matters of which we are required to take judicial notice. In this proceeding `we are required to determine the matter on the basis of the record of the trial court' [citation] since a proceeding to suppress evidence under [Penal Code] section 1538.5 `is one in which a full hearing is held on the issues before the superior court sitting as a finder of fact.' [Citation]." (People v. Superior Court (Mahle) (1970) 3 Cal. App.3d 476, 482, fn. 3, 83 Cal.Rptr. 771, disapproved on other grounds in People v. Turner (1984) 37 Cal.3d 302, 318, 208 Cal. Rptr. 196, 690 P.2d 669.)
*623 But our refusal to consider new evidence does not aid defendant. He had the burden of alleging and proving errors in the search warrant. If he had alleged that the city designation was wrong, the parties would have had a reason to focus on the point at trial. He did not make that allegation, so the prosecution had no reason to present the additional evidence it offers now. Accordingly, we must consider only the two errors the trial court found, not also the third the Court of Appeal cited.
In any event, the exact number of errors in the warrant description is not critical. The warrant described the house in several other particulars. Absent allegations and proof to the contrary, we must presume the rest of the description is accurate. Nothing in the record suggests, and defendant has not claimed, that any other house existed matching the warrant's description so closely that there was a reasonable probability it would be mistakenly searched. Accordingly, it appears "that other parts of the description which are correct limit the place to be searched to one place," a factor that supports upholding the search. (United States v. Gitcho, supra, 601 F.2d at p. 371.)
Moreover, the officer who sought the warrant and provided the description also executed the warrant. Detective Gulickson had personally observed the house for which the magistrate determined that probable cause to search existed. He personally executed the warrant on that same house. "[T]he warrant was executed by an officer who had participated in applying for the warrant and who personally knew which premises were intended to be searched; and the premises that were intended to be searched were those actually searched. Under these circumstances, there was virtually no chance that the executing officer would have any trouble locating and identifying the premises to be searched, or that he would mistakenly search another house." (United States v. Turner, supra, 770 F.2d at p. 1511; see United States v. Gitcho, supra, 601 F.2d at p. 372 ["Of even greater importance is the fact that the agents executing the warrant personally knew which premises were intended to be searched...."]; 2 LaFave, Search and Seizure (3d ed. 1996) Description of Place, § 4.5(a), p. 525 ["[C]ourts have also taken into account facts known by the executing officer but not specifically stated in the affidavit, as where the executing officer was also the affiant and the affidavit shows that the affiant had previously been to the premises intended to be covered by the warrant."]; see also id. at pp. 525-526, fn. 39 [citing many state and federal cases on point].)
We, too, believe that a court may properly consider that the risk of searching the wrong house is slight when the affiant, who knew exactly what house the magistrate authorized to be searched, also executed the warrant. We caution, however, that the executing officer's personal knowledge may not cure all deficiencies or completely substitute for a description in the warrant. It is but a factor to consider. Here, the warrant's description was sufficient even if partially erroneous. The court may rely on the officer's knowledge for assurance that the errors could not have caused a search of the wrong premises. The warrant and the officer's knowledge together leave no doubt that the magistrate found probable cause to search one particular house to the exclusion of all others, i.e., the house actually searched.
Defendant argues that a court may consider the executing officer's knowledge of the premises only if "that officer's previous contacts with the premise to be searched were ample and consequential," and that because Detective Gulickson had driven past the house only once briefly several weeks before obtaining the warrant, "his so-called `knowledge' of the premise is, as a matter of law, insufficiently reliable to be received as a basis for upholding the ensuing search." We disagree. It does not take extensive investigation to know the location of a house that someone has specifically pointed out. Detective Gulickson *624 testified he recognized and searched the house the informant showed him. The trial court clearly credited this testimony. We have no basis to discredit it, especially since Detective Gulickson did, in fact, search the correct house.
Defendant also argues that as soon as Detective Gulickson realized the warrant's description of the house was not entirely accurate, he should have contacted the magistrate to obtain an amended warrant. However, no reason appears for him to have done so. The reason for requiring a warrant is "that it provides the detached scrutiny of a neutral magistrate, which is a more reliable safeguard against improper searches than the hurried judgment of a law enforcement officer `engaged in the often competitive enterprise of ferreting out crime.'" (United States v. Chadwick (1977) 433 U.S. 1, 9, 97 S.Ct. 2476, 53 L.Ed.2d 538, quoting Johnson v. United States (1948) 333 U.S. 10, 14, 68 S.Ct. 367, 92 L.Ed. 436.) When the police obtain a warrant, the "authority of the executing officer and his need to search are carefully reviewed," and "[l]imits are imposed on the search through the requirement of particularity." (People v. Dalton (1979) 24 Cal.3d 850, 860, 157 Cal.Rptr. 497, 598 P.2d 467.) Here, the police did obtain a warrant. A neutral and detached magistrate did determine that probable cause to search existed. The warrant limited the search to one particular housethe house the informant showed the police. The magistrate specifically authorized a search of that house, which was the house actually searched. The exact address or description was not critical to the magistrate's probable cause determination. The error in stating the address or number of storiesor even in designating the city could not have affected the probable cause determination or authorization to search that house. The search did not result, and could not reasonably have resulted, in the police searching any place for which they did not have advance judicial authorization.
The authority defendant cites does not aid his position. The Court of Appeal relied exclusively, and defendant heavily, on U.S. v. Collins, supra, 830 F.2d 145. In Collins, the warrant authorized a search of a house at a certain address on the east side of the street. The warrant was then changed to state another address, described as "the last house on the west side." In fact, the house with the stated address and the last house on the west side were two different houses. The police first searched the house at the stated address, found nothing, then searched the last house on the west side, finding evidence of criminal conduct. (Ibid.) The Ninth Circuit Court of Appeals suppressed the evidence. "This warrant did not describe the place to be searched with particularity. The police were remarkably unparticular. They got the street address wrong twice. They got the sides of the street wrong once. They did not have a physical description that brought them to the right side. [Citation.] There was not only a reasonable probability that another premise might mistakenly be searched, but another premise was searched. They had an address that they followed to the wrong house.... [¶] The evil guarded against by the Fourth Amendment is doubled when the particularity of the warrant is an erroneous particularity. The result here was a frightening middle of the night invasion by police of the home of innocent people." (Id. at pp. 145-146.) The instant case, which presented no reasonable probability the wrong house would be searched, and in which the correct house was searched, bears no resemblance to Collins.
Other cases defendant cites similarly bear no resemblance to this one. In U.S. v. Ellis (11th Cir.1992) 971 F.2d 701, a warrant to search a mobilehome sent the police to the wrong one. At that wrong location, the police obtained new information that the mobilehome they sought was at a different place. Rather than obtaining a warrant for the second mobilehome, and thus receiving a magistrate's neutral, detached determination that this new information *625 supplied probable cause, they simply went there and searched it. (Id. at pp. 702-703.) Moreover, "the officers who executed the search were not the officers who had observed the mobile home previously, so they did not have any other knowledge that would have narrowed the search." (Id. at p. 704.) The court suppressed the evidence obtained in the second search, finding that the "procedure employed in this case risked a general search." (Id, at p. 705.) In U.S. v. Williamson (10th Cir.1993) 1 F.3d 1134, 1135-1136, the warrant authorized the search of premises at one address, but the police actually searched another place several miles away. In U.S. v. Rivera Rodriguez (D.P.R.1991) 768 F.Supp. 16, 18-19, the warrant contained errors that made it impossible for the police to determine which of different possible apartments was the one they were supposed to search. The instant case stands in sharp contrast to those.
"The framers of the Constitution included the requirement that the place to be searched be described with particularity to protect citizens from random intrusion by government officials and general exploratory searches. The extreme sanction of exclusion would be inappropriate since this was not a random exploratory search or intrusion without probable cause." (U.S. v. Owens (4th Cir.1988) 848 F.2d 462, 466.) Because we find that the warrant described the house to be searched with sufficient particularity, we need not determine whether the good faith exception of United States v. Leon, supra, 468 U.S. 897, 104 S.Ct. 3405, applies. (See U.S. v. Gahagan (6th Cir.1989) 865 F.2d 1490, 1499.)

III. Conclusion
We reverse the judgment of the Court of Appeal and remand the matter for further proceedings consistent with this opinion.
GEORGE, C.J., KENNARD, BAXTER, WERDEGAR, and BROWN, JJ., concur.
Concurring Opinion by MOSK, J.
I generally concur in the opinion of the court.
I write separately to note a single point of disagreement.
The Fourth Amendment to the United States Constitution expressly requires a search warrant to "particularly describ[e] the place to be searched." (Italics added.) It impliedly requires it to accurately describe it as well. The "primary purpose" of these requirements is "to minimize the risk that officers executing search warrants will by mistake search a place other than the place intended by the [issuing] magistrate." (2 LaFave, Search and Seizure (3d ed. 1996) Description of Place, § 4.5, p. 513.)
I agree with the other members of the court that the search warrant in this cause adequately satisfied the requirements of particular and accurate description of the placed to be searched.
But, unlike my colleagues, I would not rely on the fact that the officer who executed the search warrant happened to be the person who subscribed to the supporting affidavit and, as such, happened to know the place to be searched of his own personal knowledge, notwithstanding the inaccuracies in the warrant's description. A search warrant's description of the object premises is sufficiently accurate if, and only if, it reasonably minimizes the risk of a mistaken search. A search warrantlike the one heregenerally permits any officer to effect its execution, not only the affiant. The fortuity that the risk of a mistaken search does not result in an actual mistaken search because of the personal knowledge of the executing officer does not negate the risk itself. Neither does it cure any inaccuracy in the description. If it did, an altogether in accurate description could be deemed sufficiently accurate simply on the theory that the executing officer knew the object premises of his own personal knowledge. True it is that "courts have ... taken into account facts *626 known by the executing officer but not specifically stated in the affidavit, as where the executing officer was also the affiant and the affidavit shows that the affiant had previously been to the [object] premises...." (2 LaFave, Search and Seizure, supra, Description of Place, § 4.5(a), p. 525.) None, however, has stated any persuasive reason for doing so. Neither can I discern any. It is the contents of a description that determines its accuracy. The contents are not affected by the personal knowledgeor personal ignorance of the executing officer.