Filed 8/18/14  P. v. Pickle CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# COPY

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Trinity)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JAMES EARL PICKLE,<br><br>Defendant and Appellant. | C071213<br><br>(Super. Ct. No. 09F102A) |

Defendant James Earl Pickle appeals from a judgment of conviction entered on his plea of no contest to possessing more than 28.5 grams of marijuana in violation of Health and Safety Code section 11357, subdivision (c).  He seeks review of the validity of the search and seizure of evidence from his residence.  We conclude the search of his residence was proper and that the evidence was legally seized.  Accordingly, we affirm the judgment.

1

FACTS AND PROCEEDINGS

A.    The Property

Since approximately 2003, defendant had lived at One Mile Hennessey Road in Burnt Ranch, California.  The three-acre rural parcel is located on the south side of Hennessey Road, which runs in an east-west direction.  The property is bounded by Hennessey Road on the north and a wooded area that lies to the south.  The property was owned by defendant's uncle, Thomas Pickle.

Two residences and several sheds and out buildings are located on the property. Thomas Pickle and his wife resided in the main residence; defendant occupied a second house to the east of his uncle's home.  A wooden fence partially bisects the property with one house on either side of the fence. Photographic evidence in the record, however, appears to show an internal dirt or gravel roadway running the length of the property between the two residences.

B.    Washington Arrest

On August 22, 2008, defendant was driving in the state of Washington.  He was stopped by law enforcement for various traffic violations.  Upon approaching the vehicle, the officer smelled raw marijuana.  Defendant admitted he had marijuana in the car and told the officer that he had a California medical marijuana card.  He later informed the officer that he had 18 marijuana plants at his property in California.  A search of the vehicle incident to defendant's arrest revealed two glass jars of marijuana and over $28,000 in cash.

C.    Marijuana Investigation

Washington State Patrol contacted the California Department of Justice's Bureau of Narcotic Enforcement (BNE) the following month to request that the bureau check defendant's residence for a marijuana grow.  In response to the request, BNE Special

2

Agent Ryan Maki researched defendant's criminal history and discovered that defendant had several prior convictions for marijuana-related offenses. Agent Maki also checked defendant's Department of Motor Vehicles (DMV) records, which listed defendant's physical address as One Mile Hennessey Road, Burnt Ranch, California.

On September 22, 2008, Agent Maki visited a public portion of the Trinity National Forest overlooking defendant's address. Agent Maki could see what appeared to be two residences on the property as well as several sheds or garages. Agent Maki observed marijuana plants growing on the property, particularly behind the main residence. While driving down Hennessey Road, Agent Maki saw a sign with the word "Pickle" in front of a gate leading to the main residence on the property.

The next month, Agent Maki conducted a flyover of the property located at One Mile Hennessey Road and took several aerial photos of the premises. Agent Maki observed approximately 60 marijuana plants growing at various locations on the property.

On November 19, 2008, Agent Maki returned to Trinity National Forest to observe defendant's address. The marijuana plants Agent Maki had previously seen growing on the property were no longer visible. Based on his training and experience, Agent Maki believed the marijuana had been harvested and was being prepped for sale.

D.      Oregon Stop

On the following day, November 20, defendant was stopped by the Clackamas County Sheriff's Department in Oregon for various traffic violations. Defendant originally told the officers they could not search the vehicle he was driving without a warrant, but later defendant consented to a search of the vehicle. Defendant had approximately $15,000 and a small amount of marijuana in the truck. Defendant informed the officers that he "had a house full of marijuana in California," and that he had a California issued medical marijuana card and grew his own marijuana. Defendant

3

was not arrested, but the cash and marijuana were seized for testing. The police report documenting the stop was forwarded to Agent Maki's office.

E.    The Search Warrant

Based on the information obtained from the Washington State Patrol, the Oregon Sheriff's Department and his own investigation and observations of the property, Agent Maki prepared an affidavit and probable cause statement requesting a search warrant for defendant's address. The search warrant authorized Agent Maki to search the following areas:

"LOCATION 1:

"1 Mile Hennessey Road, Burnt Ranch, Trinity County, California (Trinity County APN #008-430-02-00)

"The property is further described as a rural 3 acre parcel. The main residence is further described as a dark brown, single story residence with dark brown trim. The roof is made of brown composite shingle and there is a brown metal sign in front of the gated driveway that leads to the residence that reads "PICKLE." To get to the property from Highway 299, drive 1.2 miles west on Hennessey Road. The property is on the south side of Hennessey Road. There is a second single story structure on the property to the east of the main residence. This structure has natural wood siding, brown in color, with a sliver [*sic*] and rust colored tin roof. The front door of the structure faces north.

"All other outbuildings, storage rooms and storage areas of any kind located thereon [are] designated for the use of said premises."

Agent Maki and several officers executed the search warrant on November 25, 2008. They first went to the building described as the "main residence" in the warrant, which turned out to be inhabited by Thomas Pickle and his wife. There, they found approximately 8,305.6 grams gross weight of dried marijuana, a large amount of cash, packaging materials, a scale, and two rifles. While interviewing Thomas Pickle, Agent

4

Maki asked whether anyone was home next door, referring to the "second single story structure" described in the warrant. Agent Maki specifically asked if defendant was there. Thomas Pickle told him that defendant was not home, but that he was watching over defendant's place in his absence. Officers then went to the second residence on the property and found indicia that defendant resided in the home. Law enforcement also discovered 6,172.6 grams gross weight of dried marijuana, 6,066.5 grams gross weight of partially dried marijuana, 172.7 grams gross weight of keif, sales-related evidence, packaging materials, and numerous firearms.

F.     Suppression Hearing and Trial Proceedings

The Trinity County District Attorney filed an information charging defendant with unlawfully possessing marijuana for sale (Health & Saf. Code, § 11359 [count one]), and unlawfully cultivating marijuana (Health & Saf. Code, § 11358 [count two]) together with gun enhancements under Penal Code section 12022, subdivision (a)(1). Later, a third count was added charging defendant with possession of more than 28.5 grams of marijuana. (Health & Saf. Code, § 11357, subd. (c) [count three].)

Prior to trial, defendant moved under Penal Code section 1538.5 to suppress the evidence seized from his residence and during the Washington and Oregon traffic stops. Following a suppression hearing where Agent Maki and the Washington and Oregon officers testified, the court denied the motion finding that the evidence seized in Washington was incident to a lawful arrest, that defendant consented to the search in Oregon, and that the search of defendant's residence was based on a valid search warrant.

Defendant pleaded no contest to count three and the remaining counts and allegations were dismissed. Defendant was sentenced to probation and fines. This timely appeal followed.

5

I

*The Suppression Motion*

Defendant contends the trial court erred in denying his motion to suppress because the search of his home and seizure of evidence exceeded the scope of the warrant. He argues his residence does not reasonably fit within any part of the warrant's description of Location 1 and therefore the warrant did not particularly describe his residence as a place to be searched under the warrant.

"The standard of appellate review of a trial court's ruling on a motion to suppress is well established. We defer to the trial court's factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment." (*People v. Glaser* (1995) 11 Cal.4th 354, 362.)

When, as here, the police obtain a warrant, the warrant is presumed valid. (*People v. Amador* (2000) 24 Cal.4th 387, 393 (*Amador*).) Defendant bears the burden of proving that "the warrant or supporting affidavit is inaccurate or incomplete . . . ." (*Ibid.*)

The federal and state Constitutions require that a search warrant "particularly describ[e] the place to be searched." (U.S. Const., 4th Amend.; Cal. Const., art. I, § 13; see also Pen. Code, § 1525.) "Officers are not entitled to search beyond the place described in the warrant. [Citation.]" (*People v. Minder* (1996) 46 Cal.App.4th 1784, 1788.) Complete precision in describing the place to be searched, however, is not required. (*Amador, supra,* 24 Cal.4th at p. 392.) " 'It is enough if the description is such that the officer with a search warrant can with reasonable effort ascertain and identify the place intended.' " (*Ibid.*)

In determining whether a warrant adequately describes the place to be searched, "affidavits for search warrants must be tested and interpreted in a common sense and

6

realistic, rather than a hypertechnical, manner." (*Amador, supra,* 24 Cal.4th at p. 393; *People v. Smith* (1994) 21 Cal.App.4th 942, 948-949 (*Smith*) ["Technical requirements of elaborate specificity . . . have no proper place in this area"].) Whether the description in this case was sufficient is a question of law, which we must decide independently. (*Amador, supra,* 24 Cal.4th at p. 393.)

Applying the above principles, we find the warrant particularly described defendant's residence. The executing officers were easily able to locate and identify the specified premises, especially since the agent who investigated the property, prepared the affidavit and applied for the warrant executed the search. (*Amador, supra,* 24 Cal.4th at p. 395 [" '[T]he warrant was executed by an officer who had participated in applying for the warrant and who personally knew which premises were intended to be searched; and the premises that were intended to be searched were those actually searched' "].)

After specifically identifying the physical address, which matched the address defendant listed with the DMV as his place of residence, the warrant describes the property as being on the south side of Hennessey Road. Defendant concedes that this portion of the warrant accurately describes the location of defendant's residence. The warrant further describes a second structure lying to the east of the main residence with natural wood brown siding. Defendant again concedes that his house matches that description.

The warrant then describes the second structure to be searched as having a silver and rust colored roof. When viewing a photograph of defendant's house, Agent Maki testified to areas where the roof appeared to be rust colored and where it appeared to be silver. Simply because defendant believes the roof "is better described as being 'rust colored' " rather than silver and rust colored does not mean the warrant description is inadequate. An object can often be described in multiple ways, each being accurate.

That a small building or shed immediately adjacent to the main residence also has brown siding and a rust and tin colored roof does not mean the warrant fails to

7

particularly describe defendant's residence, or that the warrant authorized the search of the main residence and the immediately adjacent smaller building only. The warrant authorized the officers to search One Mile Hennessey Road, which was identified as a "rural 3 acre parcel." The warrant, therefore, was good for the entire three acres. (*Smith, supra,* 21 Cal.App.4th at p. 950 [physical address identified in warrant consisted of 40 acres and therefore warrant was good for the entire 40 acres, including a barn located approximately one-half mile away from the main residence].) Because both defendant's residence and the smaller building were located on the three-acre parcel, both buildings were subject to search under the warrant.

We also reject as meritless defendant's contention that the warrant is constitutionally infirm because it does not list every minute detail of defendant's house such as the screened porch. The decision in *Smith* is instructive on this point. (*Smith, supra,* 21 Cal.App.4th 942.) There, a warrant authorized the search of a residence at a specified physical address and all outbuildings used in connection with or within the curtilage of the premises, but it failed to describe the property to be searched as a 40-acre parcel with a barn located approximately one-half mile away from the residence. (*Id.* at pp. 945, 949.) The court found that while it would have been preferable to specifically list the size of the parcel and to identify the barn and its relative location to the residence, the absence of such identifying information did not negate the validity of the warrant. (*Id.* at p. 949.)

The same is true here. While it may have been helpful to describe the screened porch on defendant's residence, the lack of such a description does not mean the officers exceeded the scope of the warrant by searching defendant's house. Circumscribing the scope of the warrant on such a hypertechnical basis, as defendant urges, would contravene the well settled rule that "[c]omplete precision in describing the place to be searched is not required." (*Amador, supra,* 24 Cal.4th at p. 392.)

8

Defendant's argument that the door to defendant's residence faces west rather than north as described in the warrant is likewise unavailing. First, unlike defendant contends, it is not clear from the record that the warrant's description is inaccurate. Defense Exhibit C, admitted during the suppression hearing, shows Hennessey Road running in front of the property. Based on the warrant's directions to drive west on Hennessey Road to access the property, it is reasonable to infer that the road runs in an east to west direction near the property. The property is located on the south side of the road. The land on the opposite side of Hennessey Road, then, lies north of defendant's house. The photographic evidence appears to show the front of defendant's residence nearly parallel with Hennessey Road; defendant's door is almost entirely facing the land on the opposite side of the road. In other words, the door to defendant's house faces Hennessey Road, and, hence, the entrance to the residence arguably faces north as described in the warrant.

Second, even assuming the door faces west rather than north as defendant claims, the mistake does not render the warrant deficient. (*Amador, supra,* 24 Cal.4th at p. 390 [suppression of evidence not required even though warrant's description and address of the house to be searched differed somewhat from the description and address of the actual house].) This is because other particulars including the location of defendant's house on the south side of Hennessey Road and within the three-acre parcel, the siding, and the roof color all identified defendant's house as part of the premises authorized to be searched.

We also conclude that cases cited by defendant, such as *People v. Estrada* (1965) 234 Cal.App.2d 136 [search of building with four separate apartments], and *United States ex rel. Sunrise Products Co. v. Epstein* (D.C.N.Y. 1929) 33 F.2d 982 [search of loft building with multiple tenants], in which courts invalidated warrants for searches involving multiple-occupancy structures are inapposite because this case does not involve multiple-occupancy residences. The warrant authorized the search of the entire three-acre parcel, including the main residence, the second single story structure to the east of

9

the main residence, which turned out to be defendant's residence, as well as any outbuildings and storage areas on the property. No multiple-occupancy structures were involved.

Finally, we disregard defendant's objection that the warrant's reference to the metal "PICKLE" sign located outside a gated driveway authorized the search of Thomas Pickle's residence only. Although defendant argues a separate driveway leading to his house was not gated and did not have any such sign, the photographic evidence in the record appears to show that the driveway coming from Hennessey Road and running in front of the main residence continues east through the property past defendant's house and exits again further up Hennessey Road, essentially creating one long arched internal roadway through the parcel. That the PICKLE sign was located at one end of this long internal driveway and not the other does not mean the warrant was limited to Thomas Pickle's residence, which was closest to the sign.

Defendant's argument that a fence on the property separates the two residences does not alter our conclusion. As Agent Maki testified, the fence only partially bisects the property and does not completely sever the three-acre parcel into two separate areas.

The search warrant, interpreted in a commonsense manner, authorized the search of defendant's residence located to the east of the main residence on the three-acre parcel. The premises that were authorized to be searched were actually searched. No constitutional violation occurred.

II

*Probable Cause for the Warrant*

Defendant next contends the search warrant was defective because the affidavit supporting it failed to establish probable cause. He argues that the marijuana plants Agent Maki spotted during his investigation were behind Thomas Pickle's house and not

10

his own and thus only provided probable cause to search Thomas Pickle's residence. We conclude defendant's probable cause challenge lacks merit.

"The question facing a reviewing court asked to determine whether probable cause supported the issuance of the warrant is whether the magistrate had a substantial basis for concluding a fair probability existed that a search would uncover wrongdoing." (*People v. Kraft* (2000) 23 Cal.4th 978, 1040.) " 'The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " (*Id.* at pp. 1040-1041.) The magistrate's probable cause determination is entitled to deferential review. (*Id.* at p. 1041.)

Based on Agent Maki's affidavit in support of the warrant, we conclude the magistrate's probable cause determination was amply justified. According to the affidavit, defendant was arrested in Washington with marijuana and over $28,000 in cash. Defendant informed the Washington officers that he had 18 marijuana plants growing on his property in California. In Agent Maki's experience, persons cultivating marijuana for sale often possess both the drug and large quantities of cash.

Agent Maki also researched defendant's criminal history and discovered several marijuana-related offenses. Upon investigating defendant's listed address, Agent Maki observed marijuana plants growing on the property located at One Mile Hennessey Road. And later, during marijuana harvesting season, Agent Maki returned to observe the property and could no longer see any marijuana plants growing there. Based on his training and experience, Agent Maki believed the marijuana plants had been cultivated and harvested for sale. The next day, while stopping defendant for a traffic violation, Oregon officers recovered approximately $15,000 in cash and marijuana. During the stop, defendant informed officers he grew his own marijuana. Given the totality of the facts set forth in the affidavit, there was more than a "fair probability" evidence of a

11

crime would be found at defendant's residence, which he listed as One Mile Hennessey Road with the DMV.

Defendant emphasizes that the photographic exhibits attached to Agent Maki's affidavit showed marijuana plants growing behind Thomas Pickle's residence but not defendant's. Defendant has not included a record citation to these exhibits and we have been unable to locate them in the record on appeal. We do note that a later arrest warrant affidavit contains an Investigative Report dated October 20, 2008, in which Agent Maki stated that he saw marijuana plants growing behind and along the side of both residences. Thus, it appears the search warrant affidavit may simply have inartfully described where the marijuana plants were located.

Nevertheless, even if we assume as defendant argues that Agent Maki only observed marijuana plants growing near Thomas Pickle's house, the plants were located within the larger three-acre parcel that included both houses and various sheds and outbuildings and which defendant listed as his address with the DMV. An internal driveway or road running through the parcel appears to connect the two houses, which are not fully separated by a fence. Observing marijuana growing on the property therefore provided probable cause to search the entire three-acre parcel, including defendant's residence.

Moreover, even if we disregard Agent Maki's observations of marijuana plants growing on the property, the remaining factual recitations in the affidavit are sufficient to establish probable cause in this case. Defendant had previously been convicted of other marijuana-related offenses. He had recently been stopped twice with marijuana in his possession and large quantities of cash. Each time defendant was stopped he informed the officers that he grew marijuana on his property. Defendant represented to the DMV that he lived at One Mile Hennessey Road--the place actually searched.

Having concluded there was probable cause to support the search warrant even if Agent Maki's observations concerning marijuana on the property are disregarded, we

12

need not address the People's contention that the "good faith" exception to the Fourth Amendment's exclusionary rule applies.

DISPOSITION

The judgment is affirmed.


     HULL     , J.


We concur:


     NICHOLSON     , Acting P. J.


     BUTZ     , J.