Filed 4/23/14  P. v. Gaona CA5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> ERNESTO GAONA, JR., <br><br> Defendant and Appellant. | F067226 <br><br> (Super. Ct. No. MCR041104B) <br><br> **O P I N I O N** |

## THE COURT\*

APPEAL from a judgment of the Superior Court of Madera County.  Mitchell C. Rigby, Judge.

John F. Schuck, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Kathleen A. McKenna and Charity S. Whitney, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*        Before Cornell, Acting P.J., Kane, J., and Poochigian, J.

After the trial court denied his motions to quash and traverse the search warrant, defendant Ernesto Gaona, Jr. pled no contest to various charges and allegations connected to his possession of methamphetamine for sale. The trial court sentenced him to three years in county jail, plus three years eight months of mandatory supervision. On appeal, he contends the trial court erred in denying his motions to quash and traverse the search warrant because officers failed to adequately describe the property and intentionally omitted material facts in the supporting affidavit. We will affirm.

## BACKGROUND

### *The Search Warrant*

Officers sought a warrant to search for evidence of gang methamphetamine distribution on several premises. Officer Esteves's affidavit in support of the search warrant described defendant's premises as "Ernesto Gaona's Residence—422 South 'A' Street Madera, California." The affidavit explained that an officer had observed defendant "going into the back gate behind 422 South 'A' Street in Madera" and officers had used "the GPS feature on [defendant's] phone and found [him] to be at 422 S. 'A' Street in Madera." Officers had determined that defendant was holding a cohort's methamphetamine "at his apartment located at 422 S. 'A' Street, Madera, CA." The affidavit included a photograph of 422 South "A" Street with the following description: "[A] peach with brown trim single story residence located on the west side of South 'A' Street. The front door is brown and faces east towards 'A' Street. The residence has a detached garage in the backyard. The numbers '422' are displayed on the residence south of the front door next to the garage door." Following the photographs and descriptions of all of the premises, the affidavit stated: "The search of all locations is to include all: Rooms, attics, basements, garages (attached or unattached) and all parts therein, the surrounding grounds, storage rooms or sheds, trash containers, outbuildings of any kind, and any combination safe or locked boxes associated with the above

2

described residences. In addition, to access any personal computer data bases and/or information contained on cellular phones or similar palm type storage devices. Also to be searched are any vehicles found at the above described locations or which are under the control of the occupant(s) at these residences, as demonstrated by possession of the keys." The affidavit described two vehicles to be searched. Then it listed and described the five men to be searched. Included was defendant's photograph, his first and last name, his date of birth, and his ethnicity, hair color, and eye color.

*The Search*

On June 7, 2011, officers executed the search warrant in the detached building at the back of the property. The search yielded a digital scale, marijuana, and crystal methamphetamine. The officers did not search the main residence.

*Motions to Quash and Traverse the Search Warrant*

On May 18, 2012, defendant moved to quash the search warrant on the ground that it was facially void because it did not specify with particularity the place to be searched, or on the alternative ground that the search was excessive in scope. And in the event the court denied the first motion, defendant also moved to traverse the search warrant on the ground that the affidavit supporting the warrant was defective by omission of material facts and the omission was done with reckless disregard and/or based on illegal means, and thus the affidavit did not provide probable cause for issuance of the warrant.

**People's Evidence**

At the hearing on the motions, Officer Esteves testified that he was the author of the affidavit in support of the warrant. He had observed the property at 422 South "A" Street in Madera. It was "a residence that ha[d] a detached building behind it. The residence [was] enclosed by wood fencing that close[d] off the—like a normal backyard would be, from the side of the house all the way back behind the alley." The detached building was within that fenced area. There was no fencing between the main residence

3

and the detached building. The driveway was only in front of the main residence. Esteves did not recall seeing any numbers on the buildings or any mailboxes. During the investigation, officers had seen defendant frequently accessing the property through the back fence on the alley. GPS tracking located defendant's cell phone toward the back of the property. Defendant had not been seen at the front of the property. Esteves explained that it was common for properties in Madera to contain more than one building. It was also common for both buildings to be inhabited. Sometimes there was no access between the two residences; other times, however, there was access between them because the converted garage did not have running water and the people living there needed access to the main residence to use the bathroom and kitchen. Before Esteves searched the detached building in this case, he did not know whether it was equipped with running water.

On cross-examination, Esteves testified that the two buildings on the property appeared to be a residence and a detached garage or shop that had been converted into living quarters. Officers had done only a fair amount of surveillance on the property because defendant was very conscious of surveillance and the officers had to watch him from a distance. They could see him entering the fenced area behind the house. Both the main residence and the detached building appeared to be occupied, although Esteves did not mention in his affidavit that the detached building was occupied. Esteves agreed that in the photograph defense counsel showed him there was a fence between the main residence and the detached building. Esteves was not present when the warrant was executed.

On redirect examination, Esteves explained that the warrant did not specify only the detached building because he did not know if defendant had access to the main residence. Esteves had never seen defendant enter the main residence.

4

Investigator Kraemer, who worked for the district attorney's office, testified that he conducted surveillance at 422 S. "A" Street. On the day of the search, at about 6:30 a.m., he observed defendant leave the property into the back alley, jog out of the alley, and get into a black car as a passenger. Officers conducted a traffic stop on the car and arrested defendant. Defendant was carrying a set of keys in his pocket. One key unlocked a padlock on the rear fence that defendant had walked through earlier that morning, and another key unlocked the front door of the detached building. Officers searched the detached building, but did not enter the main residence.

On cross-examination, Kraemer explained that defendant was not present when officers entered the detached building. Kraemer did not know if the detached building had a different address. The detached building contained a full kitchen with running water, couches, a television, and clothes. Kraemer ascertained that the detached building was being used as a residence.

On redirect examination, Kraemer clarified that the front door of the detached building was a normal residential door, not a garage door.

Detective Blehm testified that he was involved in surveillance of 422 South "A" Street with Kraemer. At the briefing prior to service of the search warrant, the exact place to be searched was described as "[t]he rear detached converted garage on the property at 422 South 'A' Street." Blehm searched the black car defendant was riding in when he was arrested. Blehm found a broken cell phone wedged between the front seat and the center console near where defendant was seated. The officers served the search warrant on the detached building, not on the main residence. The officers never approached or entered the main residence, although an occupant of the main residence came out to ask what was happening. When Blehm entered the detached building, he observed it was equipped with both a kitchen and a bathroom.

On cross-examination, Blehm testified that he had conducted physical surveillance on the property three or four times, sometimes from the front of the property and sometimes from the back. He had been aware of mailboxes, but he typically did not give mailbox numbers a lot of weight unless he had to. During his surveillance, he thought different people resided in the main residence and the detached building, and he knew there was back access to the detached building, front access to the main residence, and separate parking for each. He did not recall a fence between the two buildings.

On redirect examination, Blehm explained that he did not notice any numbers on the detached building during his surveillance. He was never aware that the detached building was a completely separate address.

On recross-examination, Blehm agreed that the main residence had its own garage.

**Defense Evidence**

Defense Investigator Crumb was aware of two addresses: 422 South "A" Street and 422 1/2 South "A" Street. The main residence had an attached garage. The back building appeared to be a former detached garage with access from the alley. The two buildings were separated by a fence made of wood pallets. Apparently, there was separate parking for the detached building. In front of the main residence were two mailboxes, one for each building.

**Trial Court's Ruling**

After hearing this testimony, the trial court denied the motion to quash, explaining that the back building was a converted garage on the same property. The affidavit properly described the area to be searched, including the detached garage in the backyard. Prior to the search, the officers had no way to determine that the detached garage had accommodations such that defendant would not be required to access the main residence. Only upon entry did the officers discover that the detached garage had facilities sufficient

6

for an independent living space without reliance on the main residence. Accordingly, the officers limited their search to the detached garage.

The court also denied the motion to traverse, concluding there was no evidence of any false or misleading action on the part of the officers in preparation and service of the warrant in this case.

## DISCUSSION

### I. Motion to Quash—Lack of Particularity

A defendant moving to quash a search warrant asserts that the warrant on its face lacks probable cause. (*People v. Hobbs* (1994) 7 Cal.4th 948, 975 (*Hobbs*).) The probable cause showing must appear in the affidavit offered in support of the warrant. (*People v. Carrington* (2009) 47 Cal.4th 145, 161.) Probable cause exists when, based on the totality of the circumstances described in the affidavit, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." (*Illinois v. Gates* (1983) 462 U.S. 213, 238 (*Gates*); *People v. Kraft* (2000) 23 Cal.4th 978, 1040-1041.) Probable cause "is less than proof beyond a reasonable doubt [citation]; less than a preponderance of the evidence [citation]; and less than a prima facie showing [citation]." (*People v. Tuadles* (1992) 7 Cal.App.4th 1777, 1783.) It requires only a "substantial chance" rather than an actual showing of criminal activity. (*Ibid*.; *Gates, supra,* at pp. 243-244, fn. 13.)

"A search warrant must 'particularly describ[e] the place to be searched.' (U.S. Const., 4th Amend.; Cal. Const., art. I, § 13; see also Pen. Code, § 1525.) 'The manifest purpose of this particularity requirement was to prevent general searches. By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit.' (*Maryland v. Garrison* (1987) 480 U.S. 79, 84.) This

7

purpose—to limit the search authorization to things and areas for which probable cause exists and avoid exploratory searches—must be kept in mind in determining the validity of a warrant containing an inaccurate description of the place to be searched. '[T]he purpose of the exclusionary rule is "… to deter illegal police conduct, not deficient police draftsmanship …."' (*People v. Superior Court* (*Fish*) (1980) 101 Cal.App.3d 218, 224.) [¶] Complete precision in describing the place to be searched is not required. 'It is enough if the description is such that the officer with a search warrant can with reasonable effort ascertain and identify the place intended.' (*Steele v. United States* (1925) 267 U.S. 498, 503.) Many cases have upheld warrant searches despite errors in the description of the place to be searched. (E.g., *People v. Superior Court* (*Fish*)*, supra,* 101 Cal.App.3d 218 [wrong lot number, wrong roof color]; *United States v. Turner* (9th Cir. 1985) 770 F.2d 1508 [wrong street address]; *United States v. Gitcho* (8th Cir. 1979) 601 F.2d 369 [wrong address].) 'Where one part of the description of the premises to be searched is inaccurate, but the description has other parts which identify the place to be searched with particularity, searches pursuant to such warrants have been routinely upheld.' (*United States v. Gitcho, supra,* 601 F.2d at p. 371.) When the warrant contains an inaccurate description, '[t]he test for determining the sufficiency of the description of the place to be searched is whether the place to be searched is described with sufficient particularity as to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premise might be mistakenly searched.' (*Ibid.*) 'In applying this test, we are mindful of the general rule that affidavits for search warrants must be tested and interpreted in a common sense and realistic, rather than a hypertechnical, manner.' (*United States v. Turner, supra,* 770 F.2d at p. 1510.)" (*People v. Amador* (2000) 24 Cal.4th 387, 392-393 (*Amador*).)

"Whether the description was sufficient is a question of law, which a reviewing court decides independently [citation], but the trial court determines the underlying facts, which determination is subject to the deferential substantial evidence standard of review. [Citation.] Courts have a 'strong policy favoring search by warrant rather than upon other allowable basis.' [Citations.] For this reason, when, as here, the police do obtain a warrant, that warrant is presumed valid. 'Thus if the defendant attempts to quash a search warrant, as defendant here seeks to do, the burden rests on him.' [Citation.] A defendant claiming that the warrant or supporting affidavit is inaccurate or incomplete bears the burden of alleging and then proving the errors or omissions. [Citations.]" (*Amador, supra,* 24 Cal.4th at p. 393.)

Defendant contends the affidavit did not establish probable cause to search the detached building because it failed to particularly describe it. He asserts that the affidavit instead described the main residence and provided probable cause to search only the main residence. But the affidavit clearly described the property to be searched as the main residence and any outbuildings, including a detached garage. This description was sufficient to include the detached building on this property, even if it did not include an address for it. The affidavit stated that defendant had been seen entering the property and his cell phone had been present on the property. The affidavit stated that defendant was storing methamphetamine for a cohort. Thus the affidavit provided probable cause to believe the buildings on that property contained evidence of a crime. Defendant failed to carry his burden to show a lack of probable cause.

## II. *Motion to Traverse—Factual Omissions*

A defendant moving to *traverse* a search warrant "mount[s] a subfacial challenge, i.e., attack[s] the underlying veracity of statements made on the face of the search warrant application." (*Hobbs, supra,* 7 Cal.4th at p. 965.) A defendant may move to traverse a search warrant "by showing that the affiant deliberately or recklessly omitted material

9

facts that negate probable cause when added to the affidavit. (*Franks v. Delaware* (1978) 438 U.S. 154, 171-172 [*Franks*]; *People v. Gibson* (2001) 90 Cal.App.4th 371, 381-382.)" (*People v. Eubanks* (2011) 53 Cal.4th 110, 136.) If the defendant makes a successful preliminary showing, the trial court must conduct an evidentiary hearing pursuant to *Franks.* (*People v. Thuss* (2003) 107 Cal.App.4th 221, 230.) If the defendant meets the preponderance of the evidence standard, the warrant must be voided and any evidence seized pursuant to it must be suppressed. (*Ibid.*)

But "[a]n affidavit need not disclose every imaginable fact however irrelevant. It need only furnish the magistrate with information, favorable and adverse, sufficient to permit a reasonable, common sense determination whether circumstances which justify a search are probably present. [Citations.] [¶] [A]n affiant's duty of disclosure extends only to 'material' or 'relevant' adverse facts." (*People v. Kurland* (1980) 28 Cal.3d 376, 384, fn. omitted.)

Here, defendant contends the affidavit misled the magistrate because it failed to disclose critical facts about the true nature of the property. Defendant explains that prior to the search, officers knew the target of their search was the detached building on the property, and they knew it had been converted into living quarters and was being occupied as a separate residence by people other than those who occupied the main residence, but these facts were not included in the affidavit in support of the search warrant. Defendant claims the magistrate was deceived into believing that the property contained only one residence and that the detached building was an unoccupied structure, and thus the magistrate was falsely led to believe that the main residence was the only residence to be searched.

If we were to assume error here, we would reconstruct the affidavit, adding the facts that defendant alleges were intentionally omitted. (*People v. Gesner* (1988) 202 Cal.App.3d 581, 591 ["In the case of an improper omission, the remedy is to add the

10

omission and retest the facts for probable cause"].) As a result, the affidavit would additionally state that the detached building on the property had been converted into living space and was inhabited by people other than those living in the main residence, and that the detached building was the target of the search. These facts would not undermine a finding of probable cause to search the detached building because defendant was frequently seen accessing the property through the back alley and his cell phone was located at the back of the property. He was never seen in front of the property. The officers, however, were not certain whether the detached building was outfitted with running water; accordingly, they did not know whether defendant had access to the main residence and may have stored illegal substances there as well.[1] We conclude that even if the omitted facts were material and intentionally omitted, the trial court did not err in denying the motion to traverse the warrant.

## DISPOSITION

The judgment is affirmed.

---

[1] Defendant asserts that the trial court was wrong when it found that "'prior to entering into the back structure, there was no way for the authorities to determine … that there were sufficient accommodations.'" Defendant continues: "Prior to obtaining the warrant, the police knew full well that the rear building was being used as a separate residence." But defendant only selectively quotes the trial court, which plainly and expressly stated that the officers could not determine whether there were sufficient accommodations in the detached building such that defendant would not be required to enter the main residence to use the bathroom and kitchen.

11